## W. A. BISSETT ET ALS. v. C. W. BAILEY.

(Filed 11 September, 1918.)

1. **Evidence — Mental Capacity — Parties — Transactions and Communications—Deceased Persons—Deeds and Conveyances—Appeal and Error.**

In an action to set aside a deed for want of sufficient mental capacity of the grantor, since deceased, to execute it, testimony of witnesses, who are parties to the action, as to their opinion of the mental capacity of the grantor and his physical condition thereto relating, is not such transaction or communication with a deceased person as is prohibited by Revisal, sec. 1631, and its rejection by the trial court constitutes reversible error. *Semble,* declarations of the deceased, when tending to show the basis of the opinion, are also competent, when confined to the question of mental incapacity.

2. **Same—Drugs—Morphine.**

Where, in an action to set aside a deed for mental incapacity of the grantor, there is evidence that she was old and sick at the time, and under the care of her physician, and the physician has testified, as a medical expert, that the administration of morphine for a long time would deteriorate the body and mind, testimony of a party to the action that morphine tablets were given the grantor continuously and freely at this time, whenever she was suffering, is some evidence tending to show a weakened state of the grantor's mind, under the circumstances, and improperly excluded.

ACTION tried before *Kerr, J.,* and a jury, at April Term, 1918, of NASH.

The action was brought to set aside a deed alleged to have been executed by Mrs. Nancy Bailey to her son, C. W. Bailey, who is the defendant, on 12 August, 1914. Mrs. Bailey was about 70 years old when she died, 30 August, 1914. She was feeble for some time before her death, and had two falls—one which broke her arm, and the other her leg or

hip, the latter seeming to have caused or hastened her death. There was testimony offered by the plaintiff of her bad mental and physical condition, and of her want of sufficient mental capacity to execute the deed, which was admitted by the court, but certain other testimony of a like kind was excluded. If it was competent and relevant, its exclusion, of course, was error, and the question is, therefore, whether it was admissible. The following, which is taken from the record, will show the nature of the proof which was tendered by the plaintiff, and the rulings of the court thereon:

Mrs. Hattie Hathaway, witness for the plaintiffs, was asked this question by them: "What, in your opinion, was the mental and physical condition of Mrs. Nancy Bailey after she was hurt the last time?" Defendant objected. Objection sustained, and plaintiffs excepted.

The witness, if permitted to answer the question, would have testified that her grandmother was very feeble; that she was confined to her bed the entire time after having the last fall, and that her mind was very feeble and at times wandered.

C. A. Morgan, witness for plaintiffs, was asked this question by them: "What, in your opinion, was the physical and mental condition of the deceased, Nancy Bailey, at the several times you were there, between 30 July and the first of September?" Defendant objected. Objection sustained, and plaintiffs excepted.

The witness, if allowed to testify, would have stated that her physical condition was very bad; that she was confined to her bed all the time after the second accident, up to her death; that she suffered a great deal and was unable to move in any position in the bed; that she was old and had been feeble before this time, and that this second injury had made her much weaker and more feeble; that her mental condition was also bad, and that a portion of the time she was unconscious.

The following question was asked the witness by the plaintiffs: "What, in your opinion, was her mental condition during this time—that is, did she, in your opinion, have mental capacity to execute a deed—that is, to know what act she was doing and to comprehend the same?" Defendant objected. Objection sustained, and plaintiffs excepted.

If allowed to answer the question, the witness would have said that, in his opinion, after the second injury, Mrs. Bailey was not mentally capable of executing a deed; that she did not have the mental capacity to understand her act or to know what she was doing.

Mrs. Willie Bissett, witness for the plaintiffs, was asked this question by them: "State if morphine tablets were given to your mother during her last illness." Defendant objected. Objection sustained, and plaintiffs excepted.

If permitted to answer the question, the witness would have stated that these tablets were given continuously and frequently to her mother, whenever she was apparently suffering; that more than one box of tablets were given her.

The witness was asked the following question: "State whether or not, from your observation on the 12th day of August, 1914, your mother had the mental capacity to understand the nature of the execution of a deed, its scope and effect, or its nature and its consequences, and if she had the mental capacity to know what she was doing and to contract understandingly." Defendant objected. Objection sustained, and plaintiffs excepted.

If permitted to answer, the witness would have said that, in her opinion, the deceased did not have that capacity.

It appeared that Mrs. Bailey had fallen twice before the date of the deed.

Dr. Dickinson had testified, as a medical expert, that the administration of morphine to a patient for a long time would deteriorate the body and mind in every way, and that the doctors were compelled to use the drug and chloroform in her case to relieve the pain and to keep her quiet, and to prescribe the use of it for that purpose. The plaintiff proposed to show by a witness that morphine had been given to Mrs. Bailey during her sickness, about the time the deed was executed. The question put to the witness was: "State if morphine tablets were given to your mother during her last illness." Defendant objected. Objection sustained, and plaintiffs excepted. If permitted to answer the question, the witness would have stated that these tablets were given continuously and frequently to her mother, whenever she was apparently suffering; that more than one box of tablets were given her.

There was a verdict for the defendant and a judgment thereon. Plaintiffs excepted and appealed.

*O. P. Dickinson and Manning & Kitchin for plaintiffs.*
*J. Crawford Biggs for defendant.*

WALKER, J., after stating the case: The testimony offered by the plaintiffs as to the mental capacity of Mrs. Bailey, the grantor in the deed, was competent and material, and it was error to exclude it.

We were informed at the hearing that the ruling was based on the ground that the proposed evidence involved the stating of a transaction or communication between the witnesses, who were parties to the action, and the deceased, but we do not think it does have that effect, in the true sense of the law, which generally excludes such transactions and communications. We recently said, in the case of *In re Chrisman's Will,*

175 N. C., 420: "This Court has held in *McLeary v. Norment,* 84 N. C.,
235, and more recently in *Rakestraw v. Pratt,* 160 N. C., 437, that in an
action to set aside a deed or will on the ground of mental incapacity of
the maker or testator at the time of their execution, it is competent for
a witness, after testifying as to his opinion that the maker or testator
was mentally incompetent at the time of the execution of the deed or
will, to further testify as to such communications or conversations he
had had with him upon which his opinion was founded; and as to such
the provisions of Revisal, sec. 1631, prohibiting evidence of transactions
with a deceased person, do not apply."

It was held, though, in that case, that the rule did not apply when the
validity of the will was assailed for undue influence, when the question
involved a transaction or communication with the deceased (175 N. C.,
422), citing *Hathaway v. Hathaway,* 91 N. C., 139; *Lineberger v. Line-
berger,* 143 N. C., 229, and *Bunn v. Todd,* 107 N. C., 266. But this is
not very material here, as the rejected evidence related only to the men-
tal condition of the testatrix. This Court held many years ago that such
proof was not within the inhibition of C. C. P., sec. 343 (Battle's Re-
visal, sec. 343; Code, sec. 590; Revisal of 1905, sec. 1, 1631). It was
there said (*McLeary v. Norment,* 84 N. C., 235, at 238): "The conver-
sation offered was not to prove any fact stated or implied, but the mental
condition of the plaintiff, as declarations are received to show the pres-
ence of disease in the physical system. How, except through observation
of the acts and utterances of a person, can you arrive at a knowledge of
his health of body and mind? As sanity is ascertained from sensible and
sane acts and expressions, so may and must conclusions of unsoundness
be reached by the same means and the same evidence. The declarations
are not received to show the truth of the things declared, but as evidence
of a disordered intellect, of which they are the outward manifestations.
The admissibility of the witness' opinion, resting, as it necessarily must,
upon past opportunities of observing one's conduct, requires, in order to
a correct estimate of the value of the opinion, an inquiry into the facts
and circumstances from which it has been formed. There seems to be
no sufficient reason for receiving the opinion and excluding proof of the
facts upon which it is founded." It was upon the ruling in that case that
this Court has rested all of its decisions on this question. It was there
further said by the Court, following *McCanless v. Reynolds,* 74 N. C.,
301, that the principle upon which is based the exclusion of such trans-
actions and communications as are described in Revisal, sec. 1631, is
that, unless both parties can be heard, it is best to hear neither, because
it is not only unfair and unjust to do so, but it would afford an easy
opportunity, and a great temptation, to commit perjury. *Smith, C. J.,*
said, in the *McLeary case,* that "The proposition presupposes an admis-

sion, or a statement from which an admission may be inferred, injurious to the deceased or lunatic, and it is disallowed because the party is unable to give his version of the matter." But this, he argues, does not apply merely to actions or conduct of the deceased, or his or her transactions or communications with the witness which do not tend to fix the deceased with liability or to discharge her from it, but merely indicates the state of the mind or faculties. The final conclusion was that conversations and transactions mentioned in the Code, of which a living witness is not permitted to testify when the other party to it is dead, insane, or lunatic, and unable to give his version of them, do not, in our construction of the language and purposes of the law, embrace such evidence as was here offered and rejected, and is outside the mischief intended to be remedied.

The case of *Brown v. Adams,* 174 N. C., 490, is not like this case, for there the attempt was to prove a conversation of the deceased for the purpose of fixing liability upon Mr. Adams's estate, when he, of course, and those claiming under him after his death had no opportunity to confront the witness with his testimony or that of any other witness. That is the very case described by *Chief Justice Smith* in *McLeary v. Norment, supra,* where he attempts to make clear the distinction between it and a case like this one, where the object merely is to show the mental condition and not the truth of the deceased's declarations. *Brown v. Adams* related to the terms of a contract, and was not remotely connected with the state of Mr. Adams's mind or his physical condition.

It follows that there must be another trial because of the error in excluding this testimony, which was competent. But we may properly add that in the questions asked and the answers that would have been given if permitted by the court, we do not see any reference to transactions and communications with the deceased. The opinions of the witnesses may have been derived from other sources.

The testimony as to the administration of morphine and chloroform was also improperly excluded. With the evidence of the medical expert, it tended to show the weakened state of the testator's mind and was some proof of mental derangement and incapacity.

New trial.