L. B. CHERRY AND JOANNA RAYNOR v. J. E. ANDREWS AND MARY W. GODDARD.

(Filed 14 December, 1949.)

**1. Appeal and Error § 51a—**

The determination on a former appeal that exceptions taken to the report of the referee and tender of issue thereon made by defendant was a sufficient compliance with the rules to entitle him to a jury trial, precludes the matter, and plaintiff's motion upon the subsequent trial for judgment on the referee's report and objection to the submission of the issue tendered are properly overruled.

**2. Reference § 14d—**

The findings of fact and conclusions of law of the referee are not competent as evidence in the trial of the issue raised by exceptions to the report.   G.S. 1-189.

**3. Trial § 36—**

Where the issues submitted present to the jury all proper inquiry as to all determinative facts in dispute, and afford the parties opportunity to introduce all pertinent evidence and to apply it fairly, they are sufficient, and exceptions thereto will not be sustained.

**4. Boundaries § 3b—**

Where a call in plaintiff's deed is down a branch to a swamp then up said swamp, the question of whether the call runs to the edge of the swamp or further into the swamp to its thread is a question of fact for the determination of the jury from all attendant evidence, and exceptions to the charge which fairly and correctly submits this question to the jury and exceptions to the refusal to give requested instructions to the effect that as a matter of law the call would take the line to the thread of the swamp, cannot be sustained.

**5. Appeal and Error § 51a—**

Principles of law enunciated on a former appeal become the law of the case, and exceptions to the charge and rulings of the court upon the subsequent trial in substantial accord with such principles will not be sustained.

APPEAL by plaintiffs from *Bone, J.,* at February Term, 1949, of BERTIE.

Civil action to recover land, and for damages on account of trespass thereon.

This case was here on former appeal, 229 N.C. 333, 49 S.E. 2d 641, where the facts pertinent thereto are stated.   However, in the light of the record, as it now appears, we deem it expedient to recount the case in pertinent aspects.

Plaintiffs allege in their complaint that they are the owners in fee simple of two certain specifically described tracts of land in Windsor

Township, Bertie County, North Carolina,—the boundaries of the second tract only are controverted.

Defendants, answering the allegation of ownership of the land described in the complaint, admit that "the plaintiffs own title to the Benjamin Raynor lands, which are more particularly described in the Benjamin Raynor land division of record in Book 172, at page 126, *et al,* Bertie County Public Registry"; and they aver "that the eastern boundary of said land begins at a marked gum tree on or near the banks of Cashie River, and extends a northerly direction from said marked gum tree, and the southern boundary line of said land runs from said marked gum tree north 85 deg. west 36⅔ poles; then north 70 deg. 30 min. west 16 poles a chopped beech tree, all as designated on the plat of Benjamin Raynor land division and which said line adjoins the Watson Tayloe heirs land . . ."

And upon the hearing before the referee, plaintiffs offered evidence in pertinent part, substantially as follows:

1. The admission of defendants, as above stated, that is, that "plaintiffs own title to the Benjamin Raynor lands . . ."

2. A deed from Jonathan S. Tayloe to Watson Tayloe, dated 20 September, 1869, Book NN, page 250, description reading as follows:

"Beginning at a ditch across the road leading from James Duers to the old mill across Chiskey, James Duers' line; then down said ditch and branch James Duers' line, to a large gum, said Duers' corner; thence continuing down said branch until it intersects another branch a short distance above the crossing place in traveling to the Old Chiskey Mill seat; thence continuing down said last named branch a part of which is ditched to a large dead cypress tree standing about 30 yards from the field fence; thence continuing nearly parallel with the fence through the swamp to the Main Run of Cashie River; thence up the Main Run of Cashie to where the Main Run of Chiskey enters into Cashie; thence up Chiskey run to the Old Mill seat, continuing from thence to James Duers' line, following his line to the road, including a small piece of land on which Abram Phelps resides; thence along the road to the Beginning, containing 200 acres more or less." And plaintiff offered testimony tending to show that the description in this deed covers the land now in controversy.

Plaintiff also offered two deeds from Watson Tayloe to Benjamin Raynor, one in 1878 for 100 acres of land, and the other in 1886 for 50 acres of land, and offered evidence tending to show that the land conveyed by these two deeds are parts of the tract obtained by Watson Tayloe from Jonathan Tayloe, as above set forth; and that the description in the older deed runs "to the run of Cashie Swamp; thence up the run to the run of Chiskey Branch."

And plaintiff also offered in evidence a mortgage deed from Watson Tayloe and wife to William J. Myers, dated 18 March, 1890, registered in Book 68, page 244, the description being the same as the second tract in the complaint, and is as follows:

"Beginning at the Benjamin Raynor back gate on the path leading to where Watson Tayloe now resides, and running said path to the branch; thence down the branch to Cashie Swamp; thence up said swamp to Benjamin Raynor's line; thence up said line to the Beginning, containing 150 acres, more or less, being a part of the Joanna S. Tayloe land."

And also a deed from William J. Myers, mortgagee, and John Hughes to Benjamin Raynor, dated 9 February, 1892, registered in Book 99, page 387, in which the recitals are that "William Myers sold under power; John Hughes bought; assigned his bid to Benjamin Raynor"—the description being the same as in the mortgage deed from Watson Tayloe to William J. Myers, registered in Book 68, at page 244, as above set forth. (And it is the contention of plaintiffs that the description in the mortgage covers the then unsold portion of the tract of land Jonathan Tayloe conveyed to Watson Tayloe as described above.)

And plaintiff also offered testimony tending to show that the land described in the said mortgage adjoins and lies south of the land described in the first deed from Watson Tayloe to Benjamin Raynor as above set forth.

And the plaintiff offered testimony tending to show that the branch referred to in the call "thence down the branch to Cashie Swamp" extended from the highlands through the swamp land into the run of the swamp or Cashie River. Defendants offered evidence to the contrary.

The referee, in his report, finds as facts, among other things: "Fourth: That the lands in controversy in this action are swamp lands . . . That there is a well defined line of demarcation between the high land and the swamp land, being as high in some places as ten feet.

"Fifth: That there is some appreciable physical evidence of a branch extending from said point A (in red) to the run of Cashie Swamp; That the call in the aforesaid mortgage deed, Book 68, page 244, 'thence down the branch to Cashie Swamp' has as its northern terminus the run of Cashie Swamp; and the call of boundary in said mortgage deed 'thence up said swamp' etc., is the run of said Cashie Swamp . . .

"Ninth: That the true dividing line between the lands of the plaintiffs and the said Mrs. Gladys W. Tayloe, under whom defendants claim, is the projection in a straight line of the eastern boundary of the aforesaid Lot No. 5 to the run of Cashie Swamp, and thence in a general northern direction along the run of Cashie Swamp."

And the referee made his conclusions of law in keeping with such findings of fact.

Defendants filed exceptions Nos. 3, 4 and 8 to the 4th, 5th and 9th findings of fact, respectively, and tendered this issue.

"1. Are the plaintiffs the owners of and entitled to the possession of lands lying east of a line extending from a marked gum tree north 85 deg. west 36⅔ poles; north 70 deg. 30 min. west 16 poles to a chopped beech tree and situate between the highwater mark of Cashie Swamp and the run of Cashie Swamp"? as being particularly raised by defendant's exceptions 3, 4 and 8.

Plaintiffs thereafter moved the Superior Court (1) to overrule the exceptions of defendants, and (2) for judgment confirming the report. The motions were overruled, and plaintiff excepted.

And when the case came on for hearing at May Term, 1948, as stated in opinion on former appeal, the trial court entered judgment as of nonsuit, predicated upon the premises that "counsel for plaintiffs admitted in court that if the description in the deed from Myers, mortgagee, to Benjamin Raynor does not extend from red letter 'A' on the map sent by the referee with the report, on to the run of Cashie Swamp the plaintiffs could not recover . . . and it being admitted by parties plaintiff and defendants that Cashie River is a non-navigable stream, and the court having considered the report, exceptions and the evidence bearing upon the sole question involved as to the proper location of plaintiffs' lines, and the court being of the opinion upon the record and admissions made in court that plaintiffs are not entitled to recover."

And plaintiffs in their brief filed on the appeal to this Court, presented as "Questions Involved" these two: "1. Whether the line of the deed from Myers, mortgagee, to Ben Raynor, 'thence down the branch to Cashie Swamp,' stops at the edge of the swamp as shown by red 'A' on the division map, or goes to the run of Cashie Swamp (Exceptions 2, p. 21, and 3, p. 29); and

"2. Whether the exceptions filed by defendants to the report of the referee conforms to positive statutory requirements and decisions of this Court. (Exception No. 1, R. p. 20.)"

The decision of this Court, reported in 229 N.C. 333, 49 S.E. 2d 641, was (1) "that whether the call 'thence down the branch to Cashie Swamp' terminates at the edge of the swamp or extends on to the run of it, involves a matter of fact to be found by the jury upon the evidence offered"; and (2) that "testing the exceptions to the referee's report filed by defendants, and their tender of issues by rules of procedure for preserving right to jury trial in a compulsory reference case, as enunciated in decisions of this Court, it appears that they meet the requirements sufficiently to withstand successful attack." For error pointed out the judgment of nonsuit was reversed.

The record now before us on this appeal shows that when the case was called for trial:

1. Plaintiffs moved for judgment on the report of the referee. Motion overruled. Exception.

2. Plaintiffs objected specifically to the first issue tendered, which issue was amended on motion of defendants, substituting the word "south" for the word "east," as appeared in the original exceptions,—objection being based on the ground that the issue did not arise from the findings of the referee and the pleadings. Overruled. Exception.

The case was thereupon submitted to the jury upon the evidence offered by the parties on the hearing before the referee, and under the charge of the court, and on the issue quoted above, to which the jury answered "No."

Plaintiffs requested certain special instructions to the jury. The court gave them in modified form, to which plaintiffs excepted.

And from judgment for defendants plaintiffs appeal to Supreme Court and assign error.

*H. S. Ward for plaintiffs, appellants.*

*J. A. Pritchett and F. T. Dupree, Jr., for defendants, appellees.*

WINBORNE, J. Plaintiffs challenge, on this appeal, the correctness of the judgment from which appeal is taken, on several grounds. However, after careful consideration of each exception, we are constrained to hold that error of sufficient import to justify disturbing the judgment is not shown.

I. The first and second exceptions may be treated together. They relate (1) to the overruling of plaintiffs' motion for judgment on the report of the referee, and (2) to the submission of the first issue. It is contended that no issue was submitted in defendants' exception on the finding of fact No. 5,—"which presented the pivotal and controlling point in the case," that is, "that the line in the Tayloe mortgage and the Ben Raynor deed went to the run of the swamp." And it is contended that the first issue does not arise on the pleadings and findings of the referee. Moreover, it is stated, in reference to these exceptions, that "it is apparent that the report of the referee has been treated as of no more significance than a judgment of a J. P." But be that as it may, these exceptions relate to straw threshed out on former appeal. Reference to the exceptions filed by defendants, as shown in the records on former appeal and on this appeal discloses that exception is made specifically to finding of fact No. 5, and the first issue tendered by defendants is expressly directed to this finding of fact. And on the former appeal the question of the suffi-

ciency of the exceptions and tender of issues to preserve defendants' right to a jury trial, was raised, and considered, and determined.

It is true that the former appeal also challenged the ruling of the court in granting the nonsuit. But since it was held (1) that whether the call "thence down the branch to Cashie Swamp" terminates at the edge of the swamp or extends on to the run of it, involves a matter of fact to be found by the jury upon the evidence offered, and (2) that the issue tendered was sufficient to withstand successful attack, confirmation of the report of the referee was not in order. It must be borne in mind that the reference had in this action was ordered under the provisions of the statute providing for compulsory reference. G.S. 1-189. Under this Section it is declared that "the compulsory reference . . . does not deprive either party of his constitutional right to a trial by jury of the issues of fact arising on the pleadings, but such trial shall be only upon the evidence taken before the referee." And the decisions of this Court hold that the report of the referee, consisting of his findings of fact and conclusions of law, would not be competent as evidence before the jury. See *Bradshaw v. Lumber Co.,* 172 N.C. 219, 90 S.E. 146, and *Booker v. Highlands,* 198 N.C. 282, 151 S.E. 635.

And it is not inappropriate to say that while the first issue might have been framed differently, it arose upon the pleadings, G.S. 1-196, and was, and is deemed sufficient to present to the jury the controverted question as to whether plaintiffs own the swamp land lying between their highland and the run of Cashie Swamp. Issues submitted are sufficient when they present to the jury proper inquiries as to all determinative facts in dispute, and afford the parties opportunity to introduce all pertinent evidence and to apply it fairly. *Lister v. Lister,* 222 N.C. 555, 24 S.E. 2d 342, and cases cited.

II. Exceptions Nos. 3 to 9, both inclusive, grouped under two headings, bring into focus the principles of law for proper construction of the description in question.

Exception No. 3 relates to three deletions from instructions requested by plaintiffs as follows: "It is a general rule of law for the construction of deeds, that where a deed calls for a swamp, or creek not navigable it extends to the run or thread of the stream"; "If the run of the branch can be defined and appears to extend beyond the edge of the swamp and into the swamp, the law carries that line to the run"; "You may consider the nature and character of the branch, beyond the edge, if it is definite, then this deed and its call would go on to the run of the swamp,"—eliminating the words, "then this deed and its calls would go to the run." It is insisted that these requests are not met in the general charge.

And Exceptions 4 to 9, both inclusive, are directed to portions of the charge as given, and "are collected," as plaintiffs say "as presenting the

same question, whether the construction of this deed and its line by the call 'to the swamp' followed by the next call 'thence up the swamp,' presents a WHAT and not a WHERE."

Exception 6 is directed to this charge: "As I understand it the deed from the mortgagee to Benjamin Raynor has the same description as this mortgage. You see this description does not say, whether the edge of the swamp or the run of the swamp but says, 'thence down the branch to Cashie Swamp,' and therefore it becomes necessary to decide in this case, and it is the question for the jury to decide as to whether the description takes it to the edge of the swamp or to the run of the swamp."

Exception No. 7 is to that charge, immediately following that to which Exception No. 6 relates, reading: "If the deed had said specifically that it went to the run of the swamp, then there would not have been any question about it, or if it had said to the edge of the swamp there would have been no question about it, but when it says 'down the branch to Cashie Swamp,' it leaves the matter in such a state that the court cannot determine it as a matter of law but it is for the jury to say what was meant, taking into consideration all the evidence and the surrounding facts and circumstances described by the evidence."

And, continuing, the court charged: "I charge you as a matter of law that where a creek is called for by name, nothing else appearing, the call must go to the running stream, and when neither the side line or the bank, nor the middle line is expressed, the conclusion of law is, that the channel or middle line is intended. This rule applies when the natural object is unique or has properties or characteristics peculiar to itself and which admit of its easy and certain identification, as a creek or river. There is then no ambiguity in the call, and resort to oral evidence is not necessary in order to fit the description to the thing. (But when, as in this case, the Cashie Swamp is called for it is for the jury to say upon the evidence what was intended, whether the edge of the swamp or whether the run of the swamp)." The portion in parenthesis only is the subject of Exception No. 8.

And continuing the court further charged: "The law in this situation will not say arbitrarily whether it is the run of the swamp or the edge of the swamp, but it is a question of fact for the jury to determine upon all the evidence as to which was intended by the call in this mortgage and in this deed."

Exception No. 9 is to court charging that the first issue, reading it, will be submitted to the jury.

Then, after stating the contentions of the parties, the court, at the request of plaintiffs, gave these instructions: "The question is whether that mortgage from Watson Tayloe to Wm. J. Myers . . . and the deed from Wm. Myers to Benj. Raynor . . . covered the land in controversy.

That question seems to turn upon the question whether the call in the mortgage and the deed: 'thence down the branch to Cashie Swamp' extends to the run of that swamp. The court is leaving that question to you. In determining this question, the jury may consider whether the branch, by a perceptible run or line, reaches the run or thread of the stream. Another aid to the jury is the consideration of the next line, which in your case is: 'thence up the swamp' to what is admitted to be a tract owned by Benj. Raynor at the time this deed was made. You may also consider the nature and character of the branch beyond the edge and if it is definite. The plaintiffs contend that they have shown, to your satisfaction, that this branch does extend beyond the edge and on to the run of the swamp."

In connection with these portions of the charge, it is to be recalled that on the former appeal, it is held by this Court: "In the light of applicable principles of law declared in the case of *Rowe v. Lumber Co.,* 133 N.C. 433, 45 S.E. 830, particularly in respect of the 'Watkins 50-acre tract,' and again in same case reported in 138 N.C. 465, 50 S.E. 848, in which *Brooks v. Britt,* 15 N.C. 481, is cited with approval, it would seem that whether the call 'thence down the branch to Cashie Swamp' terminates at the edge of the swamp or extends on to the run of it, involves a matter of fact to be found by the jury upon the evidence offered."

In *Brooks v. Britt, supra,* in opinion by *Gaston, J.,* the Court had this to say: "His Honor was unquestionably correct in laying it down as a principle in law, that the swamp was a natural object more certain, and therefore more worthy of reliance than the distances called for in' the grant; that this swamp was in law a boundary of the patent, and that the defendant's grant must be extended to it, if the distances would not reach, and restrained by it, if these distances overreached it. But we are of opinion that he erred in pronouncing that if there was a certain and known channel for the water to run in said swamp, the call of the grant was for that run. Whether the run in the boggy and sunken land, or the margin of such boggy and sunken land, was the call of the grant, depended upon facts fit to be proved, and proper to be passed upon by the jury. If, when the grant issued, the low grounds were known as the Swift Creek Swamp, and the run or channel was not termed the swamp, but had another appellation, such as Swift Creek, or east prong, or any other distinctive name, then the call of the grant was for those low grounds, and not for the run. If, on the contrary, the run was then known as Swift Creek Swamp, and the bottom lands were distinguished from it as the low grounds of that swamp, then indeed, the call was for the run, and not for the low grounds. If each were known by the same appellation, and indiscriminately called Swift Creek Swamp, then there were two

natural objects, either of which corresponded with the call of the grant, and which of these was intended, might and ought to be determined by reference to other matters of description in the grant, or to extrinsic facts, rendering the one or the other more probable."

And in *Rowe v. Lumber Co., supra,* in respect of the Watkins 50-acre tract, *Walker, J.,* wrote for the Court: "The question raised in regard to this tract is as to its proper location, and this largely depends upon the determination of its first or beginning call . . ."

And further on in the opinion in this same case, the Court said: "But the plaintiffs contend that the third call, which is 'thence said (Old Field) branch to Catskin,' should stop at the edge of the swamp, or, at least, that the matter should be left to the jury so that they can determine what is meant by 'Catskin,'—that is, whether the edge or the run of the swamp was intended. The defendant insists that the call should go to the run, but if, as a matter of law, the run is not called for, then the jury should decide as a matter of fact where the end of this line should be. We cannot say that either the edge of the swamp or the run is the objective swamp, but it should be submitted to the jury to ascertain, upon the evidence and under the instructions of the court, where the end of the third line or the fourth corner of the tract is, and then a line should be run from this corner according to the call of the deed to the first station. It will be seen, therefore, that the true location of this tract is to be determined by the same general principle which was applied in the case of the 64-acre tract. When the call is at all ambiguous or uncertain it is always a question of fact for the jury to decide what was meant, and to fix the boundaries according to what they may find from the evidence, under the law as given to them by the court, was the real intention of the parties to the deed." And in respect to the 64-acre tract—the court declared: "We still adhere to the doctrine so well stated by *Gaston, J.,* in *Brooks v. Britt, supra,* that where a swamp is called for, whether the run is in the boggy and sunken land, or the margin of such boggy and sunken land, is the call of the grant, depends 'upon facts fit to be proved and proper to be passed upon by the jury.'"

Testing the portions of the charge under consideration and the rulings in respect of the deleted portions of requested instructions, by the exceptions thereto, it appears that both the charge and the rulings are in substantial accord with the principles of law on which the case was decided on former appeal. These principles therefore constitute the law of the case,—and are binding on this appeal.

All other exceptions have been considered and in them no prejudicial error is made to appear.

Hence in the judgment on the verdict, we find

No error.