WACHOVIA BANK AND TRUST COMPANY v.
SMITH CROSSROADS, INC., AND E. L. SMITH.

(Filed 1 February 1963.)

**1. Bills and Notes §§ 4, 18—**

A negotiable note is *prima facie* issued for valuable consideration, G.S. 25-29, and when the note is also under seal, there is a rebuttable presumption of consideration, with the burden upon the maker and endorser to prove their defense of want of consideration.

**2. Bills and Notes §§ 3, 17— Monies deposited to drawer's account in reliance on genuineness of forged drafts is consideration for drawer's note.**

The evidence disclosed that the office manager of a corporation converted to his own use monies paid to him for the corporation and covered his defalcations by forged drafts and chattel mortgages in favor of the corporation, which were discounted by plaintiff bank and the proceeds deposited to the corporation's credit in accordance with custom, and that upon the discovery of the forgeries the corporation executed its note to the bank in the amount of the forged drafts, which note was endorsed by the corporation's president. *Held:* The note of the corporation and its renewals were supported by the consideration of the sums deposited to its account, and it may not deny liability on the note without refunding the sums so deposited, there being no extension of credit by the bank on the forged instruments to the manager. G.S. 25-28.

APPEAL by defendants from *Gwyn, J.,* May 28, 1962 Regular Term of FORSYTH.

Plaintiff, by this action, seeks to recover the sum of $50,000, the amount of a promissory note executed by corporate defendant (hereafter Crossroads), endorsed by individual defendant on 21 August 1960, payable to plaintiff's order ninety days after date.

Defendants not only denied liability because of lack of consideration to support the note but asserted a counterclaim in the sum of $267,892. As the basis of the counterclaim defendants allege plaintiff, by fraud, coercion, and without consideration, caused them to pay it $67,892, which payment financially embarrassed defendants, causing them damages for loss of profits in the amount of $150,000, and an additional sum of $50,000 as punitive damages. During the trial defendants withdrew their charges of fraud and duress, but insisted they had paid plaintiff $57,564.84 not supported by any consideration and were to that extent entitled to recover on their counterclaim.

The court nonsuited the counterclaim. It submitted one issue directed to the amount owing plaintiff. The jury answered the issue in the sum of $50,000. Judgment was entered on the verdict and defendants appealed.

*Womble, Carlyle, Sandridge & Rice by W. P. Sandridge and C. F. Vance for plaintiff appellee.*

*Ted G. West and W. C. Palmer for defendant appellants.*

RODMAN, J.   The note was negotiable in form. *Prima facie* it was issued for valuable consideration. G.S. 25-29. It was also under the seal of each of the parties. This created a rebuttable presumption of consideration, *Mills v. Bonin,* 239 N.C. 498, 80 S.E. 2d 365. Defendants had the burden of proving their defense of want of consideration; but the verdict was in response to a peremptory instruction. Defendants assign this as error.

The evidence on which the parties based their respective contentions is to this effect: Crossroads is a Ford dealer. Individual defendant is its president. He owns about 90% of its stock. Carl Smith (hereafter manager) was in September 1959 and had been for some years prior thereto Crossroads' office manager and bookkeeper. He was a trusted employee. Crossroads had for several years prior to September 1959 financed a substantial part of its business by loans obtained from plaintiff. One of the purposes for which it regularly applied to plaintiff for loans was to purchase new automobiles from other dealers. When Crossroads purchased a new vehicle from another dealer, it would execute a mortgage and note to plaintiff on the vehicle so purchased. This note and mortgage would then be attached to a draft on

plaintiff. The draft would be deposited in Union National Bank of Lenoir to the credit of Crossroads. Plaintiff would honor the drafts so drawn. Boyd J. Smith, E. L. Smith, and B. A. Lutz had authority to draw drafts on plaintiff. It had cards showing their signatures. Manager was not authorized to draw drafts, but he did have authority to sign checks on Crossroads' account with Union National Bank. Manager, for a substantial period of time prior to September 1959, had been converting to his own use monies paid to him for Crossroads. To balance his books he would deposit to the account of Crossroads with Union National Bank a draft on plaintiff purportedly drawn by Lutz for Crossroads, to which drafts were attached mortgages securing the amount of the drafts. Manager forged Lutz' name to the drafts and mortgages. On 30 September 1959 plaintiff held drafts to the amount of $166,000, secured, or purportedly secured by mortgages on new motor vehicles owned by Crossroads. This amount included $117,892 of forgeries. Plaintiff inquired of Crossroads about the amount of the debt and the location of the motor vehicles securing the loans. Manager then confessed that the motor vehicles listed on most of the drafts did not exist. The monies obtained from plaintiff by means of the forged drafts had been deposited in Crossroads' account at Union National Bank to cover the shortages created by his previous thefts of cash belonging to Crossroads.

Upon disclosure of these facts, defendants executed a note to plaintiff dated 30 September 1959 for the shortage—$117,892. Before the maturity of that note, payments were made reducing plaintiff's claim to $95,000. A note for that amount was executed 23 October 1959. A renewal note for like amount was executed 21 February 1960. A payment of $10,000 was made and renewal note for $85,000 was executed 21 April 1960. A payment of $20,000 was made and renewal note for $65,000 was executed 6 June 1960. A payment of $15,000 was made and the note sued on was given.

Defendants contend since the drafts were all forged no liability could be imposed on Crossroads. They rely on G.S. 25-28.

The statute does not relieve the party whose name is signed to a forged document "unless the party against whom it is sought to enforce such right is precluded from setting up the forgery or want of authority."

It is conceded the amounts called for by the drafts were credited to Crossroads' bank account. Manager never had possession of any of these funds. Plaintiff never extended him credit. That being so, Crossroads could not deny liability on a claim made by plaintiff without repaying the monies it received on the face of the forged instruments.

*Mills v. Bonin, supra* (503); *Jones v. Bank,* 214 N.C. 794 (799), 1 S.E. 2d 135; *Lawson v. Bank,* 203 N.C. 368, 166 S.E. 177; *Bank v. Grove,* 202 N.C. 143, 162 S.E. 204; *Brittain v. Westhall,* 135 N.C. 492(496); *Brown v. Smith,* 67 N.C. 245; *Union Bank & Trust Co. v. Long Pole Lumber Co.,* 74 S.E. 674 (W. Va.); 3 Am. Jur. 2d 557.

If there was no ratification of manager's acts in drawing drafts, Crossroads nevertheless received consideration for the original and renewal notes because of the monies deposited by plaintiff in Crossroads' bank account under the belief it had been requested to make the deposit. *Guaranty Co. v. Reagan,* 256 N.C. 1; *Dean v. Mattox,* 250 N.C. 246, 108 S.E. 2d 541; *Rhyne v. Sheppard,* 224 N.C. 734, 32 S.E. 2d 316; *Sparrow v. Morrell & Co.,* 215 N.C. 452, 2 S.E. 2d 365; *White v. Green,* 50 N.C. 47.

Since the evidence fails to establish Crossroads' plea of lack of consideration, individual defendant is liable by reason of his endorsement.

The conclusion here reached that defendant could not deny liability on the note without refunding the monies paid Crossroads in reliance on the drafts renders it unnecessary to consider the question of competency of audits of Crossroads' records for the purpose of establishing its profits or losses in differing periods.

No error.