C. J. WHITLEY v. MONROE M. REDDEN, EXECUTOR OF THE ESTATE OF LEON D. HYDER

No. 57

(Filed 30 January 1970)

**1. Trial § 40—— form of issues —— amount of recovery**

The issue, "How much, if anything, is plaintiff entitled to recover," is not sufficient when other issues of fact are raised, since submission of the single issue may omit controverted facts upon which the right to recover is based.

**2. Trial § 40—— issue on amount of indebtedness**

Failure to submit an issue on amount of indebtedness is not error when it appears that the amount is exclusively a matter of calculation.

**3. Trial § 40—— sufficiency of issues**

Issues are sufficient when they present to the jury proper inquiries as to all determinative facts in dispute and afford the parties opportunity to introduce pertinent evidence and to apply it fairly.

**4. Trial § 40—— submission of issue —— pleadings and evidence**

An issue should not be submitted to the jury unless the pleadings unequivocally raise such issue and the issue is supported by the evidence.

**5. Bills and Notes § 20—— action on notes —— prima facie case**

Where plaintiff introduced in evidence past-due notes under seal, he made out a *prima facie* case as to the entire amount of the notes, which precluded nonsuit even though defendant asserted affirmative defenses.

**6. Bills and Notes § 20—— submission of issues —— amount owing plaintiff**

In an action to recover on two sealed notes, one in the sum of $120,000 and the other $65,000, the trial court did not err in failing to submit to the jury an issue on the amount defendant owed plaintiff — although it might have been the better practice to do so — where the notes were introduced into evidence without objection, the defendant offered no evidence controverting the amount due; and the other issues submitted were

sufficient to present the contentions of the parties and to allow the court to enter judgment on the verdict.

**7. Appeal and Error § 53; Bills and Notes § 20— submission of issues — notice of maker's incapacity — error cured by verdict**

In an action to recover on two notes executed by defendant's testator, failure of the trial court to submit issues, tendered by defendant, which would have required a jury finding whether the payees had notice of testator's mental incapacity and whether payees took unfair advantage of the decedent, *held* cured by the jurors' verdict declaring the testator to have been mentally competent at the time he executed the notes.

**8. Evidence § 11— dead man's statute — action on note executed by decedent — evidence of decedent's mental competency**

In an action against an executor to recover on two notes allegedly executed and delivered by the decedent to the plaintiff and to plaintiff's witness, who later assigned his note to plaintiff, testimony by plaintiff and his witness, offered in support of their opinion concerning decedent's mental competency to execute the note, that decedent had been in serious financial trouble and had requested their help in obtaining a loan for one million dollars, that decedent gave them the notes in settlement for their help in obtaining the loan, and that decedent had sufficient mental capacity in his transactions with them to know what he was doing, *held* incompetent and inadmissible under the Dead Man's statute, G.S. 8-51, notwithstanding the trial court restricted the testimony to the issue of mental competency, since the testimony of plaintiff's transactions with decedent also tended to establish the execution and delivery of the notes.

**9. Evidence § 11— dead man's statute — mental competency of decedent — admissibility of evidence**

Where there is an issue of the mental capacity of a decedent or a lunatic, an interested witness may relate personal transactions and communications between himself and the decedent or lunatic as a basis for his opinion as to the mental capacity of the decedent or the lunatic; but such evidence will be rejected when it is offered for the purpose of proving, and does tend to prove, vital and material facts which will fix liability against the representative of the deceased person, or the committee of a lunatic, or anyone deriving his title or interest through them.

**10. Trial § 15; Appeal and Error § 30; Evidence § 11— general objection to evidence — evidence admissible for more than one purpose — exception to rule**

The rule that evidence is admissible over a general objection if it is competent for any purpose, *held* inapplicable in the case where the challenged testimony as to the mental competency of a decedent also tended to establish the plaintiff's claim in violation of the Dead Man's statute, G.S. 8-51.

ON certiorari to the North Carolina Court of Appeals to review its decision reported in 5 N.C. App. 705.

This is a civil action by which plaintiff seeks to recover on two

sealed notes, payable on demand, the first dated 11 June 1965 in the sum of $120,000, and the second dated 2 August 1965, in the sum of $65,000. Plaintiff alleges that the two notes were executed for value received and were delivered by defendant's testator, Leon D. Hyder (Hyder), to C. J. Whitley (Whitley) and E. R. Flowers (Flowers). Flowers subsequently assigned his interest in the notes to Whitley by the following language: "FOR VALUE RECEIVED, the undersigned hereby sell, assign and transfer his interest in this Note to C. J. Whitley." No other notations appear upon the notes. Plaintiff by his complaint, among other things, alleged:

"7.  That on or about the 28th day of December, 1967, the plaintiff made demand upon the defendant for payment of said promissory notes attached hereto and marked Exhibits "A" and "C" respectively, but the defendant has failed and refused to pay the same or any part thereof.

"8.  That there is now due and owing to the plaintiff from the defendant the sum of One Hundred Eighty-five Thousand ($185,000.00) Dollars, together with interest thereon at the rate of six (6%) per cent per annum from December 28, 1967, no part of which amount has been paid."

Defendant's answer contained the following:

"7.  The allegations of paragraph 7 are not denied.

"8.  That the allegations contained in paragraph 8 of the complaint are untrue and are denied."

Defendant, by his answer, also alleged a lack of consideration, denied execution and delivery of the notes, and asserted the defense that, upon the dates the respective notes were executed, Hyder did not have sufficient mental capacity to execute and deliver either of said notes. The notes were, without objection, introduced into evidence, and at the close of all the evidence the court submitted and the jury answered issues as follows:

1.  Did Leon D. Hyder sign the note dated June 11, 1965, payable to C. J. Whitley and E. R. Flowers, in the sum of $120,000.00 and deliver same to them, as alleged in the complaint?

ANSWER:  Yes.

2.  Did Leon D. Hyder on June 11, 1965, have sufficient mental capacity to sign and deliver said note?

ANSWER:  Yes.

3. Was said promissory note issued for valuable consideration?

ANSWER: Yes.

4. Did Leon D. Hyder sign the note dated August 2, 1965, payable to C. J. Whitley and E. R. Flowers in the sum of $65,000.00 and deliver same to them, as alleged in the complaint?

ANSWER: Yes.

5. Did Leon D. Hyder on August 2, 1965, have sufficient mental capacity to sign and deliver said note?

ANSWER: Yes.

6. Was said promissory note issued for valuable consideration?

ANSWER: Yes.

Upon the verdict of the jury the court entered the judgment which in pertinent part provided:

"IT IS THEREFORE ORDERED ADJUDGED AND DECREED that plaintiff have and recover of the defendant the sum of One hundred and eighty-five thousand ($185,000.00) Dollars, together with interest thereon at the rate of 6% per annum from December 28, 1967."

Defendant appealed to the North Carolina Court of Appeals. The Court of Appeals found error and ordered a new trial. Plaintiff filed petition for writ of certiorari to the North Carolina Court of Appeals to review its decision pursuant to G.S. 7A-31(c)(3). The petition was allowed by order dated 16 October 1969.

*Bailey & Davis for plaintiff appellant.*

*Redden, Redden & Redden for defendant appellee.*

BRANCH, J.

[1-4] Defendant contends that the trial judge erred in failing to submit an issue as to the amount defendant owed plaintiff, if anything. The often-used issue, "How much, if anything, is plaintiff entitled to recover," is not sufficient when other issues of fact are raised. This is true because submission of the single issue may omit controverted facts upon which the right to recover is based. *Yates v. Body Co.*, 258 N.C. 16, 128 S.E. 2d 11. However, it is not error for the trial court to fail to submit to the jury an issue as to the amount

of indebtedness where it appears that the amount is exclusively a matter of calculation. *Indemnity Co. v. Perry*, 200 N.C. 765, 158 S.E. 560. Issues are sufficient when they present to the jury proper inquiries as to all determinative facts in dispute and afford the parties opportunity to introduce pertinent evidence and to apply it fairly. *Cherry v. Andrews*, 231 N.C. 261, 56 S.E. 2d 703. An issue should not be submitted to the jury unless the pleadings unequivocally raise such issue, *Henderson v. R. R.*, 171 N.C. 397, 88 S.E. 626, and unless such issue is supported by the evidence. *Carland v. Allison*, 221 N.C. 120, 19 S.E. 2d 245.

[5, 6] Here, the notes became past due after plaintiff's demand for payment on 28 December 1967. The pleadings admit that demand had been made on both notes and that defendant had refused to pay any part of the amount due. When plaintiff introduced the past-due sealed notes, he made out a prima facie case as to the entire amount of the notes, which precluded nonsuit even though defendant asserted affirmative defenses. *Parks v. Allen*, 210 N.C. 668, 188 S.E. 100; *Trust Co. v. Smith Crossroads, Inc.*, 258 N.C. 696, 129 S.E. 2d 116. Defendant offered no evidence to controvert the amount due, but supported with evidence his main defenses of failure of delivery, lack of consideration, and lack of sufficient mental capacity on the part of his testator to execute and deliver the notes. Although it might have been better practice to have included with the other necessary issues an issue fixing the amount due, we conclude, after considering the pleadings and the evidence, that the issues submitted were sufficient to present all the contentions of the parties and to allow the court (even without necessity of calculation) to enter judgment upon the verdict which settled the rights of the parties.

[7] Defendant assigns as error the refusal of the court to submit issues tendered by defendant as to each note, as follows:

"Did C. J. Whitley and E. R. Flowers on June 11, 1965, have notice of such incapacity as would put a reasonably prudent person upon inquiry about his mental capacity to transact business?

"Was Leon D. Hyder paid a fair and full consideration for said note by C. J. Whitley or E. R. Flowers?

"Did C. J. Whitley and E. R. Flowers on June 11, 1965, take unfair advantage of Leon D. Hyder?"

Defendant argues that the court erred in failing to submit these issues, and relies upon the case of *Chesson v. Insurance Company*, 268 N.C. 98, 150 S.E. 2d 40, which was an action to rescind a cancella-

tion of a life insurance policy on the ground that plaintiff's intestate was mentally incompetent. There, the court submitted issues similar to those above quoted, in addition to the issues of the intestate's mental capacity. *Chesson* may be distinguished from the instant case in that the jury, in *Chesson*, by its answer to the issue of competency, established the intestate to be incompetent. In the case before us the jury's answer to the issue of mental capacity established the testate to be competent. Had the jury by its verdict established defendant's testator to be incompetent, it would have been error for the trial court to refuse to submit the tendered issues and to charge thereon. The failure of the trial judge to submit the tendered issues and to charge thereon was cured by the verdict of the jury declaring testator to be competent.

[8]    Defendant, relying on G.S. 8-51, contends that the trial court erred in admitting the testimony of plaintiff Whitley and his assignor, Flowers, regarding their personal communications and transactions with the deceased, Hyder. Flowers testified for plaintiff that in his opinion Hyder was mentally competent in November 1964, on 11 June 1965, and on 2 August 1965. The witness was first questioned about a conversation between himself and Hyder in a Lakeland, Florida hospital during November 1964. Upon defendant's objection, the court instructed the jury:

> "Members of the jury, this evidence is offered and admitted for the sole purpose of disclosing the basis of this witness' opinion as to the mental capacity of the deceased, and assisting you in determining the credibility, or worthiness of belief of that opinion, if you find that it does, or tends to do so, and for no other purpose. The objection is OVERRULED. EXCEPTION FOR THE DEFENDANT."

Flowers then testified that Hyder told him and Whitley that he was in serious financial trouble and that in consideration for a commitment of one million dollars to save his company he wanted Whitley and Flowers each to have a one-third interest in the company.

The witness related several conversations which allegedly occurred between himself and Hyder. The following quotations from the record are representative:

> "I next had a conversation with Mr. Hyder, over the phone, the following week.
>
> Q.  All right, what did he tell you during that conversation?
>
> MR. REDDEN:  OBJECTION.

THE COURT: Members of the jury, this evidence is offered and admitted for the limited purpose previously discussed in the court's instructions, and you will consider it only in the light of those instructions, for that restrictive purpose. OVERRULED. EXCEPTION. DEFENDANT'S EXCEPTION NO. 25.

THE COURT: Answer the question and tell what Mr. Hyder told you. OBJECTION. OVERRULED. EXCEPTION. DEFENDANT'S EXCEPTION NO. 26.

A. He said, 'You really got a commitment for a million dollars? MOTION TO STRIKE ANSWER. MOTION DENIED."

— — — — —

"Mr. Hyder met me at the airport when he came to Charlotte June 11, 1965. We went from the airport to the Manger Inn.

Q. What did Mr. Hyder say to you at the Manger Inn? OBJECTION. OVERRULED. EXCEPTION. DEFENDANT'S EXCEPTION NO. 47.

THE COURT: Admitted under the same instructions previously given, concerning the testimony of this witness.

A. He said he wanted to discuss my participation for consideration of securing the one million dollar commitment, and the note that he had with him, he wanted to discuss that, and he wanted to discuss that, he wanted to go to a local bank and — MOTION TO STRIKE ANSWER. MOTION DENIED. DEFENDANT EXCEPTS."

— — — — —

". . . I had occasion to see Mr. Hyder on August 2, 1965, in Charlotte. Mr. Whitley was there other than Mr. Hyder and myself. We had a conversation with him on that date.

Q. What did he say to you? OBJECTION. OVERRULED. EXCEPTION. DEFENDANT'S EXCEPTION NO. 53.

THE COURT: This is admitted with the instructions previously given you by the Court, concerning the witness' testimony, members of the jury.

A. Mr. Hyder told us that he had with him a note for the remainder and final consideration for us, for consideration of the commitment that we obtained for him. . . ."

— — — — —

Plaintiff Whitley testified that in his opinion Hyder had sufficient mental capacity to know what he was doing and to understand

the nature and effects of his acts on November 12, 1964 and during the period of January to June 1965. He then testified, over objection, that he had a conversation with Hyder in Lakeland, Florida, in a hospital room on 12 November 1964, and at that time Hyder stated he would give Whitley and Flowers one-third of his business if they would help him obtain a million dollars for his business. One additional example of his testimony is as follows:

"On August 2, 1965, I had another conversation with Hyder in Charlotte, North Carolina. Mr. Flowers was present. We met at Manger Motel.

Q. Tell the jury what Mr. Hyder said to you on that date?

Objection. Overruled. Exception. This is DEFENDANT'S EXCEPTION NO. 102.

THE COURT: This evidence is offered and admitted under the instructions previously given concerning the testimony of this witness.

A. Mr. Hyder said that he was going to finish making settlement with us, and he said that he arrived at a figure of sixty-five thousand dollars for what we had done. He said when he found out where he stood with the company, he was going to give an additional sixty-five thousand dollars."

Plaintiff and Flowers also testified to transactions and conversations with Hyder which tended to prove the execution and delivery of the notes upon which this action was founded.

Applying G.S. 8-51 as analyzed by this Court, it appears that Whitley, a party to the transactions, and Flowers, the person under whom plaintiff derived a part of his interest, were testifying in Whitley's interest and against the representative of a deceased person concerning personal transactions and communications between each of them and the deceased person. It does not appear that defendant has "opened the door" so as to come within the statutory exception. Ordinarily, both of the witnesses would have been disqualified by the statute, G.S. 8-51. *Bunn v. Todd,* 107 N.C. 266, 11 S.E. 1043; *Peek v. Shook,* 233 N.C. 259, 63 S.E. 2d 542. However, plaintiff contends that this evidence is competent by virtue of an exception to the statute, created by case law interpretation, to the effect that a person (who would otherwise be precluded from testifying by the statute), after testifying as to the mental capacity of a deceased person may testify to transactions and communications with deceased in order to show the jury that the opinion was well

founded. Plaintiff relies upon the cases of *McLeary v. Norment*, 84 N.C. 235; *Rakestraw v. Pratt*, 160 N.C. 436, 76 S.E. 259; *Bissett v. Bailey*, 176 N.C. 43, 96 S.E. 648; *Plemmons v. Murphy*, 176 N.C. 671, 97 S.E. 648; *In re Hinton*, 180 N.C. 206, 104 S.E. 341; *In re Will of Brown*, 194 N.C. 583, 140 S.E. 192; *In re Will of Brown*, 203 N.C. 347, 166 S.E. 72; *In re Will of Lomax*, 226 N.C. 498, 39 S.E. 2d 388; *In re Will of Kestler*, 228 N.C. 215, 44 S.E. 2d 867; *Goins v. McLoud*, 231 N.C. 655, 58 S.E. 2d 634.

We deem it necessary to briefly review the North Carolina case law in order to properly delineate the rule and apply it to the facts before us.

The landmark case of *McLeary v. Norment, supra*, was a suit to set aside a deed. An interested party was allowed to testify in plaintiff's behalf as to plaintiff's lack of mental capacity and to relate conversations had with plaintiff to show the opinion was well founded. However, the court in so holding stated:

> "The proviso proceeds upon the idea that, unless both can be heard, it is best to hear neither. But the conversations offered are not to prove any fact stated or implied, but the mental condition of the plaintiff . . . The declarations are not received to show the truth of the things declared, but as evidence of a disordered intellect, of which they are the outward manifestations."

This Court, considering the statute, G.S. 8-51, in the case of *In re Will of Lomax, supra*, stated:

> "It has been frequently held that as between the propounder or an interested executor and a person who is interested in the result of the trial, the statute now known as G.S. 8-51, rendering an interested survivor incompetent as a witness to a personal transaction with a deceased person, applies in a contest over a will, notwithstanding the proceeding is *in rem*. (Citations omitted) There is an exception when the evidence is *directed solely* towards the question or issue of mental condition or testamentary capacity. In that case, it is competent for the interested witness to give testimony of such transaction or conversation, *solely*, however, as a basis for the opinion formed as to the mental condition or capacity of the deceased." (Citations omitted (Emphasis added).

The case of *In re Will of Chisman*, 175 N.C. 420, 95 S.E. 769, considered the testimony of the chief beneficiary of a will, who was offered as a witness by the propounder and questioned as follows:

"What do you know about the preparation of this will, if anything?

"Objection by caveators. Overruled. Exception by caveators.

"A.   She told me she had made her will willing me her property; that she had changed the first will leaving my sister out, and that she copied this from the first will so that she would know that it was written correctly."

The Court held that the objection should have been sustained and, after recognizing holdings in *McLeary v. Norment, supra,* and *Rakestraw v. Pratt, supra,* stated:

"This case, however, does not come within the scope of those precedents.

"The evidence of the witness tended directed to establish the will and to prove that it was the free and voluntary act of the testatrix and also to contradict the charge of undue influence alleged by the caveators and submitted to the jury under the issue.

.　.　.　.

"The conversation with the testatrix testified to by the witness was not a casual conversation upon some indifferent subject, admitted in evidence as a basis for forming an opinion upon the sanity of the testatrix, but the declarations constitute very vital evidence tending to establish the will and to rebut the charge of undue influence. Such declarations may not be proven by a witness interested in the result of the action. *Bunn v. Todd,* 107 N.C. 266."

Accord: *Bissett v. Bailey,* 176 N.C. 43, 96 S.E. 648; *Hathaway v. Hathaway,* 91 N.C. 139.

**[9]**    We conclude that North Carolina is one of those states which has a "Dead Man's" statute and allows an interested witness, where there is an issue of mental capacity, to relate personal transactions and communications between the witness and a decedent or lunatic as a *basis for his opinion as to the mental capacity of the decedent or lunatic;* however, such evidence will be rejected when it is offered for the purpose of proving and does tend to prove vital and material *facts* which will fix liability against the representative of a deceased person, or committee of a lunatic, or anyone deriving his title or interest through them.

**[8]**    The rule set forth in the case of *In re Hinton,* 180 N.C. 206, 104 S.E. 341, that evidence is admissible over a general objection if

it is competent for any purpose, is not applicable to the testimony here challenged. The challenged testimony was so directed and weighted towards proving facts essential to establishing plaintiff's claim, rather than the basis of witnesses' opinions as to sanity, that it became impossible for the trial court to effectively remove the prejudice to defendant by a limiting instruction. Therefore, a limiting instruction by the court could not make the evidence admissible.

The trial judge erred in admitting the testimony of plaintiff Whitley and Flowers regarding their personal communications and transactions with the deceased Hyder.

The decision of the Court of Appeals is affirmed as modified and the case is remanded to that court with direction to award a new trial, to be conducted in accordance with the principles herein set forth.

Modified and affirmed.