## In re will of JAMES M. THORP.

### (Filed 14 April, 1909.)

1. Evidence—Statements—Silence—Admissions.

   Statements made in the presence of one (who did not reply), to become his implied admissions, must have been made on an occasion when a reply would properly be expected; and testimony as to statements made in a plea for mercy to the court by an attorney, in the hearing of his client and not denied by him, as to his mental incapacity, is inadmissible upon an issue of *devisavit vel non* attacking the probate of his will on that ground.

2. Evidence—Wills—Devisavit Vel Non—Records—Books of Settlements—Originals—Copies.

   Upon an issue of *devisavit vel non* upon the question of the mental capacity of the testator to make a will, the book of settlements, kept in the clerk's office in accordance with the provisions

of section 21, chapter 156, Laws 1883, recording copies of original papers, is not competent evidence of the contents of such papers. The original papers or the records of the executive committee of the State Hospital are competent.  *Quœre.*

3. **Evidence—Wills—Devisavit Vel Non—Mental Capacity—Book of Settlements—Harmless Error.**

Upon an issue of *devisavit vel non* the testimony of both sides showed that the testator had been confined in and discharged from a State's hospital about twelve years previous to his death; and the conflicting evidence upon his mental capacity to make a will was directed almost exclusively to his mental condition during the last few years of his life: *Held*, (1) in the absence of any evidence to the contrary, the law will presume the discharge was based upon the restoration of the testator's mind; (2) that the erroneous admission in evidence of the book of settlements in the office of the Superior Court clerk was harmless error.

4. **Evidence—Wills—Mental Capacity—Burden of Proof—Instructions.**

After placing the burden of proof on the caveator to establish the insanity of the testator at the time of making the will, by the preponderance of the evidence, it is correct for the judge to charge, in effect, that if the jury find from the evidence that the testator signed the writing offered in evidence as and for his last will; that at the time he had mental capacity to know and understand what he was doing, to know his property and its disposition, his relationship to his property and the persons benefited, the nature and effect of his act, he had mental capacity sufficient to make a will.

AN ISSUE of *devisavit vel non,* tried at February Term, 1909, of GRANVILLE, his Honor, *Judge Long,* presiding.

The issue was found by the jury in favor of the propounder.

From the judgment rendered, the caveator, William H. Thorp, appeals.

*B. S. Royster, H. K. Lassiter* and *T. T. Hicks* for propounder.
*Graham & Devin* for caveator.

BROWN, J.  The ground upon which the will of the testator, James Thorp, was contested is stated in the *caveat* to be "for the reason that at the time of the execution thereof, and continu-

ously thereafter until his death, the said James M. Thorp did not have the capacity to make and execute a will, for that he was not of sound and disposing memory at and during said time." The evidence on both sides is quite voluminous. That introduced for the propounders, including that of the witnesses to the will, tends to prove that the testator, a colored man, was eccentric, had been committed to the asylum for the insane in 1894 for about two years and then discharged; that he returned to his home and managed his affairs successfully up to his death—so much so that he surpassed all of his race in that community in making money and in keeping it, and got decidedly the better of two lawyers on a land trade; that up to his death he kept his houses insured, collected his rents, could read and write and kept accounts accurately, and that he had ample capacity to make a will.

The evidence offered for caveator tends to prove that testator was of unsound mind, suffered from mental delusions, and that he did not have testamentary capacity at the time of the execution of the will.

There are two exceptions to the evidence relied upon in the brief of counsel for appellant:

1. To the exclusion of evidence of witness Nat Venable, by whom caveator proposed to show that a few years before the death of testator he pleaded guilty to trespass, and his counsel, in his plea to the court for mercy, stated in the presence of testator that he had lately returned from the insane asylum and was still of weak mind and not responsible for his acts. It would be hard measure to charge a person in after life with everything an attorney may say for him in fervent plea to the judge for mercy upon his client. But in any event the occasion was one when the testator was not called upon to speak for himself, and under such circumstances he will not be held to have acquiesced in what was said by another. To make the statements of others evidence against a person, on the ground of the implied admission of their truth by silent acquiescence therein, they must be made on an occasion when a reply might be properly expected.

It would have been indecorous for the testator to have interrupted the speech of his counsel while addressing the court. *Tobacco Co. v. McElwee,* 96 N. C., 74; *Guy v. Manuel,* 89 N. C., 86; *State v. Jackson, post.*

2. To the admission in evidence of certain pages of the "Book of Settlements," No. 3, of the Superior Court of Granville County, upon which was recorded the following:

THE EASTERN HOSPITAL.

DR. J. F. MILLER, *Superintendent.*

GOLDSBORO, N. C., June 2, 1896.

*To the Board of Directors of the Eastern Hospital.*

This is to certify that Mat Thorp, an insane person, was sent to this hospital from Granville County, and that, in my opinion, he having become of sane mind, is recommended for discharge. A duplicate of this certificate is made to the clerk of the Superior Court of said county, in accordance with the provisions of section 21, chapter 156, Laws 1883.

Very respectfully,  J. F. MILLER,
*Superintendent.*

THE EASTERN HOSPITAL.

DR. J. F. MILLER, *Superintendent.*

GOLDSBORO, N. C., June 2, 1896.

*To* DR. J. F. MILLER,

*Superintendent of the Eastern Hospital.*

SIR:—The Board of Directors of the Eastern Hospital having considered your certificate, made in accordance with the provisions of section 21, chapter 156, Laws of North Carolina, Session of 1883, to the effect that Mat Thorp, an insane person in this hospital, was sent from the county of Granville, and that, in your opinion, he having become of sane mind, you recommend that he be discharged, it is hereby ordered that the said Mat Thorp be discharged.

Very respectfully,  J. F. SUTHERLAND,
T. B. PARKER,
*Executive Committee.*

IN RE THORP.

These appear to be the discharge papers of the testator, required by law (Revisal, sec. 4596) and issued in pursuance of the statute. It is possible the originals, or the record of the Executive Committee of the Eastern Hospital, containing them, would be competent evidence, if proven and identified, but it is quite clear that the book of settlements, upon which the papers are recorded, is not competent.

We have been cited to no statute which authorizes the recording of such certificates upon the book of settlements, and our own researches fail to discover any.

It is familiar learning that when the law does not require or authorize an instrument or paper to be recorded, a copy of the record is not admissible in evidence. 1 Greenleaf Ev., sec. 485, p. 551 (n). But a majority of the Court are convinced that the error was harmless and evidently did not affect the result.

The record discloses that a large majority of the witnesses of both sides spoke of the fact that the testator was confined in the hospital, and that he was discharged, after being there some eighteen months or two years, and returned to his home. The law will presume, in the absence of anything to the contrary, that the testator was discharged because he had become of sane mind again.

It is not even contended that the testator was ever a raving maniac or hopelessly incurable. On the contrary, for most of the period covered by the evidence of the caveator, the testator had occasional delusions and was sensitive about any reference to the asylum. The will was made some twelve years after testator's discharge, and it is only in the very last years of his life that witnesses for caveator declare he was "mighty bad off." All the evidence in the record, outside of these certificates, indicates clearly that the testator was confined in the asylum for a period and then discharged because it was thought he had been restored to normal sanity. In fact, the testimony on both sides is directed almost exclusively to the mental condition of the testator in the last few years of his life, and there is nothing tending to prove that immediately after leaving the asylum he was otherwise than normally sane, something which may well be presumed from the admitted fact that he had been duly dis-

charged and resided at home for twelve years thereafter, undisturbed. For these reasons we are unable to see anything prejudicial in the admission of the book of settlements.

3. The several exceptions to the charge of the court are without merit. His Honor properly placed the burden of proof on caveator to establish insanity at the time of the making of the will, by a preponderance of the evidence, and charged as follows: "If you find from the evidence that Mat Thorp signed the paper writing offered in evidence as and for his will, and you find that at the time he signed the alleged will he had mental capacity to know and understand what he was doing, the property he owned and wished to dispose of; knew and understood the relation he bore to his property and the persons to whom he was giving it; understood the nature of the act in which he was engaged, and its extent and effect; if he possessed the mental capacity so defined, and you find the facts so to be, from a review of all the evidence, he had mental capacity sufficient to make a will. But if at the time he executed the paper you find that he did not know what he was doing, and you find that he was suffering from an insane delusion or delusions, so that he did not understand what property he had and what he was doing with it, or did not know how and to whom he was giving his property, and did not understand and know the nature or extent and effect of his act; and if you find the facts so to be, from the greater weight of the evidence, then he did not have sufficient capacity to make a will." This charge is in line with an array of well-settled precedents. *Horne v. Horne,* 31 N. C., 106; *Cornelius v. Cornelius,* 52 N. C., 595; *Lawrence v. Steel,* 66 N. C., 586; *Paine v. Roberts,* 82 N. C., 453; *Horah v. Knox,* 87 N. C., 489; *Bost v. Bost,* 87 N. C., 479; *Crenshaw v. Johnson,* 120 N. C., 274; *Snow's will,* 128 N. C., 102.

Upon a review of the entire record we are of opinion that the appellant has shown no substantial error which warrants us in directing another trial.

No Error.