IN RE WILL OF JOHN A. BROACH.

(Filed 15 November, 1916.)

### 1. Wills—Probate—Evidence.

Evidence is sufficient for the probate of a paper-writing purporting to be a will which tends to show that the subscribing witnesses went to the house of the deceased with an attorney, the deceased said he wanted them to witness his will, which was lying on a table in the room, then signed it, saying it was his will, requested the witnesses to sign it, the signing by the deceased and the witnesses being in the presence of each other.

### 2. Wills—Probate—Impeaching Evidence—Burden of Proof—Trials.

Where the formal execution of a paper-writing purporting to be a will has been proven, it is prima facie the will of the deceased, devolving upon the caveators the production of impeaching evidence.

### 3. Wills—Mental Capacity—Evidence—Witnesses—Opinions—Trials.

In proceedings to caveat a will a witness may be asked of his own knowledge whether in his opinion the deceased possessed sufficient mental capacity to make the will at the time, know his property, his relatives, the claims they had upon him, and to whom he wanted to give his property.

### 4. Same—Instructions—Intelligence.

Where the court has properly charged upon mental capacity of the deceased to make a will, a further charge that it is not required that he should have had a high degree of intelligence is without error.

### 5. Wills—Undue Influence—Wife.

Undue influence sufficient to set aside a will must be more than that arising from affection and kindness, but must partake of the nature of fraud; and such will not be inferred from the fact alone that the deceased

devised his property to his wife, who was with him at the time when he executed the paper-writing, and attending him during his sickness, or the fact that hers was a strong and his a weak will.

### 6. Wills—Caveat—Parties—Evidence—Presumptions.

Where a paper-writing is sought to be set aside for undue influence of the wife of the deceased, a requested instruction that the failure of the wife to testify was a strong circumstance tending to prove its invalidity, is properly refused, there being no parties to a *devisavit vel non*.

### 7. Wills—Signature—Execution—Evidence—Request.

Where there is evidence that a paper-writing has been signed by the deceased and duly attested by the witnesses, and that the deceased declared it to be his will, a requested instruction that there was no evidence that the will was prepared at his request is properly refused.

### 8. Wills—Caveat—Burden of Proof—Presumptions—Instructions.

In proceedings to caveat a will, the burden is upon the caveator to show undue influence, if such is relied on to set aside the writing; and his prayer for instruction that if the person benefited procured the same or advised the terms of the instrument, it would raise a presumption of undue influence, and the jury should so find unless explained to their satisfaction, is properly refused.

### 9. Wills—Mental Capacity—Evidence—Circumstance—Blank Space.

A paper-writing purporting to be a will which appoints the deceased's wife as executor and guardian of minor children, should there be any at the time of his death, and in another section leaves a blank space for the appointment of an executor and guardian in the event the wife predeceased him, cannot be construed as an anomaly of his appointing her as guardian for the children after her death, and a circumstance affecting the question of the deceased's mental capacity.

APPEAL by caveators from *Devin, J.,* at March Term, 1916, of RICH-MOND.

*Stevenson & Prince, Thomas & Phillips, and H. H. McLendon for caveators.*

*A. R. McPhail, John P. Cameron, and Kelly & Boggan for propounders.*

CLARK, C. J. The following issue was submitted to the jury: "Is the paper-writing propounded, and every part thereof, the last will and testament of John A. Broach, deceased?" to which the jury responded "Yes."

The first assignment of error is that the court allowed the propounder to introduce the paper-writing as the will of John A. Broach. The witnesses Porter and Hinson testified that in company with A. R. McPhail, a lawyer, they went to the home of John A. Broach and his wife,

and Mr. Broach, after some general conversation, said that he wanted Porter and Hinson to witness his will. The paper was lying on the table. Broach got up, took the pen, signed the paper, and handed it to the witness Porter, who also signed it; both of them did this at the request of Broach, who remarked, "This is my will." Both of the witnesses signed in the presence of Mr. Broach and he signed in their presence. On this evidence the will was properly admitted in evidence. The exception to this, which is the first assignment of error, cannot be sustained. *In re Bowling,* 150 N. C., 507; *In re Herring's Will,* 152 N. C., 258. The formal execution having thus been formally proven, it was prima facie the will of the deceased, and the caveators were called on to put on evidence to impeach it.

Exceptions 2, 3, 4, 5, and 6 cannot be sustained. The Court has repeatedly held proper the question propounded, "State whether or not, in your opinion, Mr. Broach possessed sufficient mental capacity in September, 1909 (the date of the execution of the will), to know what property he had, who his relatives were, what claims they had upon him, and if he had wanted to dispose of his property, to whom he intended to give it." *Bond v. Mfg. Co.,* 140 N. C., 383; *In re Thorp's Will,* 150 N. C., 487, and many others.

The seventh assignment of error is that the court charged: "The requirements and test of capacity to make a will is that a man shall have mind and intelligence sufficient to know and understand what property he has, who are the natural objects of his bounty, and his relationship to them, and the manner in which he is disposing of his property. It does not require a high degree of intelligence in order to have capacity to make a will, but he must have intelligence sufficient, as I have just stated. The caveators having alleged in their caveat that the will was procured by undue influence, and that there was want of mental capacity upon the part of the testator, that he was suffering from insanity or dementia, it becomes necessary for us to understand in the beginning what we mean by this term." The court further charged: "In passing upon that the fact that John A. Broach bequeathed his property to his wife would not by itself be evidence of undue influence, because influence obtained by affection and kindness cannot be regarded as undue influence, but the influence must partake of the nature of fraud."

The court also charged: "If upon this testimony you find that this alleged will of John A. Broach was in writing and signed by him, and that he called upon two witnesses to attest it, and that they signed it as witnesses in his presence, being requested to sign it as his will, and you find that at the time when he signed this alleged will he had mental capacity to know and understand what he was doing, the property he owned and wished to dispose of; knew and understood the relations

he bore to his property and the persons to whom he was giving it; understood the nature of the act in which he was engaged and its extent and· effect; if he possessed the mental capacity so defined, and you find the facts so to be and from a review of all the evidence that he had a mental capacity sufficient to make a will, then you will answer the issue 'Yes.'" The above instructions are assigned as error, but we find no error therein: *In re Abee's Will,* 146 N. C., 273; *Marshall v. Flinn,* 49 N. C., 199; *Wright v. Howe,* 52 N. C., 412.

The caveators also assigned as error the refusal of the court to charge as requested: "In this case the caveators allege and contend that said paper-writing was executed by John A. Broach on account of undue influence exercised over him by his wife and John Ponds. It is a presumption of law that if a party to an action, or interested in the result of an action, has in his or her possession, or under his or her control, evidence or witnesses, and fails to produce said evidence or witnesses, and that if the evidence was produced it would be against the party under whose control it is, the court charges you that the failure of Mrs. Broach and John Ponds to testify in this case is a strong circumstance tending to prove that said alleged will was executed by John A. Broach on account of undue influence exercised by him, by them, or one of them." This exception cannot be sustained. In an issue *devisavit vel non* there are no parties, and there is no rule of law that the failure of the parties interested in the will to produce witnesses whose evidence would be against them "is a strong circumstance tending to prove that said alleged will was executed by John A. Boach on account of undue influence over him by them or one of them." There is no evidence that undue influence was exercised over the testator in making this will; nor that there were witnesses under the control of Mrs. Broach and John Pond who would have testified against them. Nor could the judge have charged, as requested, that "There is no evidence that the will was prepared at the request of John A. Broach; and unless the jury so found they should answer the issue 'No.'" It is sufficient that the will was prepared and ready for signature and that the testator signed it, declaring it to be his will, and that the witnesses signed in his presence at his request.

Nor was it error for the court to refuse to charge, as requested, that it was the duty of the jury "to consider the fact that said alleged will provides that all of said property shall go to his wife in case she survives him, and later provides that in case of her death prior to his, said property shall go to Lilly May Ponds and Pauline Ponds, and that his wife should act as guardian for said children. This in itself is a circumstance for you to consider against the validity of the alleged will." A reference to the will shows that in section 2 the testator appoints his

wife as executor and guardian of the other beneficiaries, if they should be minors at the time of his death, and in section 5 he provides that if his wife should predecease him he nominated "........." as executor and trustee and guardian of the said beneficiaries. This blank was not filled up, and said article 5 is based upon the contingency that his wife should not survive him.

It is also assigned as error that the court refused to charge, "If the jury find from the evidence that the person to be benefited by said alleged will procured the same to be written, or advised the terms of the instrument, then a presumption of undue influence on her part is raised, and unless explained to the satisfaction of the jury that no such undue influence existed you will answer the issue 'No.'" This changes the burden of proof, which is upon the caveators to show undue influence. There is no evidence of undue influence on the part of any one in procuring the execution of this will. There was evidence tending to show that the wife was a stronger personality than the husband, and that in the ordinary affairs of life he was very much under her influence, and that a year after the will was made he was sent to a sanitarium. But the fact that a wife has influence with her husband, and even if there is evidence that she is the dominant partner, this does not of itself prove that she exerted that influence to dictate the terms of the will; and there is no evidence here that she did so. It would be hard if a husband who may have had very little will of his own during life should on that account be held incompetent to express his will as to the disposition of his property after his death when there is, as in this case, no proof that there was in fact any undue influence exerted upon him in making his testamentary will.

The question whether the husband had sufficient mental capacity to make the will was testified to by many witnesses, and the jury responded in the affirmative. We find

No error.