IN RE WILL OF A. MARCELLUS STOCKS.

(Filed 20 March, 1918.)

**1. Wills—Probate—Evidence.**

Evidence that a witness wrote the paper-writing offered for probate as a will, saw the testator sign it, held his hand when he made his mark, that the other witness signed it, that it was signed by the testator in the presence of both on a table by his bedside in his room, and that the writing was witnessed by both at the testator's request, is sufficient to justify the jury in drawing the inference that the writing was executed according to law.

**2. Wills—Probate—Mental Capacity—Opinion—Evidence.**

Witnesses are competent to testify to the mental capacity of a testator to make a will, if they knew the testator well, had conversations or business transactions with him, and testify that in their opinion, based thereon, he knew what he was doing, what property he had, and to whom he wished to give it.

**3. Wills—Evidence—Deceased Persons—Statutes.**

Transactions or conversations with a deceased person upon which witnesses have based their opinion as to his mental capacity to make a will, testified to in proceedings of caveat, are not incompetent under Revisal, sec. 1631.

**4. Wills—Evidence—Probate—Affidavits—Corroborations.**

Affidavits of witnesses attesting a will on the probate before the clerk, are competent in corroboration of the testimony of these witnesses at the trial.

**5. Wills—Mental Capacity—Before and After—Evidence.**

Where the issue is the mental capacity of the testator at the time of making a will, evidence of his capacity within a reasonable time before and after is competent.

APPEAL by caveators from *Calvert, J.,* at September, 1917, Special Term of PITT.

*Harry Skinner, Albion Dunn, and W. F. Evans for caveators.*
*E. G. James & Sons and Harding & Pierce for propounders.*

CLARK, C. J. The testator, Marcellus Stocks, died in June, 1914, leaving three daughters, all married, and two wills. In the first will he left his entire property to his three daughters, subject to the life estate of his widow. The only change made by the last will is that the share of land given by the first will to Ludie McLawhorn was located between the share given his daughter Jane Briley and the share given his other daughter, Eva Nobles. In the last will, he exchanged the shares of land which had been given to Jane Briley and Ludie McLawhorn. There was

evidence that his motive in this was because the husband of his daughter Ludie McLawhorn had given the testator some trouble and he did not wish to locate that share between the other two daughters.

The appeal of the caveators is based on 69 exceptions, which they group under 6 heads.

The first group presents the question whether there is any evidence to support the finding on the first issue, "Was the paper-writing offered for probate as the last will and testament of Marcellus Stocks signed and executed according to law?" The evidence fully justified the finding of the jury. The witness Manning testified that he wrote the paper-writing and saw the testator sign it, and held the pen when he made the mark. The other witness to the will testified "that is my signature. The will was signed in testator's room, on his table, right by his bed. . . . . I am not positive who signed it first, Mr. Manning or myself." He also testified that the witnesses signed at the request of the testator.

The second group of exceptions is, "Was there evidence in the record of undue influence?" Upon perusal of the record we do not find any evidence to support this objection.

The third group of exceptions all go to the question whether the witnesses were qualified to express an opinion as to the mental competency of the testator. These witnesses, ten in number, all testified that they knew the testator well; had conversations or business transactions with him, and from what they saw of him and their dealings with him, seeing him, hearing him talk, and association with him, in their opinion he had mental capacity to know what he was doing, what property he had and to whom he wished to give it. *In re Boach's,* 172 N. C., 522; *In re Thorpe,* 150 N. C., 487.

The fourth group of exceptions is upon the ground that the evidence excepted to was incompetent under Revisal, 1631. But these exceptions cannot be sustained, for the testimony did not embrace transactions or conversations between the witness and the deceased, but was offered to show the condition of the testator's mind.

The fifth group of exceptions is Exception 64 as to the competency of the affidavits of the attesting witnesses to the will made on the probate before the clerk. These affidavits were admitted only in corroboration of the attesting witnesses at this trial and the court so instructed the jury at the time that the affidavits were offered.

The sixth and last group of errors assigned embraced Exception 67, which is to the charge of the court: "You will consider the testimony as to testator's lack of testamentary capacity, if you find that he lacked it, some time before executing the will, or some time afterwards, merely as tending to show whether or not at the time he executed the will he had this testamentary capacity." In *McAllister v. Rowland* (Minn.),

15—175

Ann. Cases, 1915, B, 1005, it is said: "Where the issue is the mental capacity of the testator at the time of making the will, evidence of incapacity within a reasonable time before and after, is relevant and admissible."

The case turned almost entirely upon questions of fact and upon a full examination of the above exception, we find

No error.