IN RE WILL OF MAGGIE NIPSON LOMAX.

(Filed 20 September, 1944.)

**1. Evidence § 46—**

While considerable latitude is permitted in the reception of opinion evidence as to mental capacity from witnesses who base their opinion on personal association, this rule should not be expanded to include mere expressions of opinion not based on circumstances importing mental incapacity.

**2. Wills § 23b: Evidence § 45a—**

A mere abstract statement by a witness that a person under investigation, in his opinion, was or was not competent to make a will, or a contract or a deed, is improper and inadmissible. Capacity to make a will or contract is not a simple question of fact but a conclusion which the law draws from certain facts gained from personal observation as a predicate for the expression of opinion.

APPEAL by propounder from *Nettles, J.,* at April Term, 1944, of BUNCOMBE. New trial.

Issue of *devisavit vel non* decided in favor of caveators.

The decedent, an unmarried colored woman, had worked for many years as a chambermaid in an Asheville hotel and had accumulated an estate of some ten thousand dollars. In August, 1940, she suffered a slight stroke and ceased her employment. In January, 1941, she went to the office of an attorney and gave directions for the preparation of her will, and on 8 January, 1941, signed it in the attorney's office, retaining the will in her possession. She was then 72 years of age. The will contained many bequests of various kinds of property to some twenty-five persons, some of them relatives. She left surviving two sisters and a number of nieces and nephews. The propounder B. R. Quick was named executor. Caveat was filed by certain nieces and nephews. Maggie Lomax died in January, 1944.

The validity of the paper writing propounded as the last will and testament of Maggie Nipson Lomax was contested on the ground of mental incapacity. An issue addressed to this determinative question was submitted to the jury in the following form: "At the time of signing and executing said paper writing, did Maggie Nipson Lomax have sufficient mental capacity to make and execute a valid last will and testament?" To this the jury answered "No."

In support of their contention caveators over objection were permitted to ask and the witnesses to answer the following questions:

Witness Frank Stephens: Q. "Do you think she was capable of disposing of her property by will, realizing the consequences and effect of her acts in 1941? A. No. At the time of her death Maggie had a home and two lots on Biltmore Avenue, a home on Pine Grove, and the house she sold on Livingston Street which is not paid for. She should have between $6,000 and $7,000 in cash money. She had two diamond rings, a lot of silverware and chinaware."

Witness Edgar Penland: Q. "State whether or not Maggie in your opinion was mentally capable of disposing of her property by will 8 January, 1941. A. She was not."

Witness Melvin Cannon: Q. "In your best judgment, do you think she was capable of disposing of her property? A. No, sir. Q. About January 8, 1941? A. No, sir."

Witness John Ward: Q. "In your opinion, did Maggie Lomax at the time have sufficient mental capacity to make a will? A. At that particular time in my opinion she did not."

Witness Nora Fair: Q. "Did she know what property she had? A. I don't know. Q. In December, 1940, or January, 1941, did Maggie Lomax have mental capacity to make a will disposing of her property? A. No, I don't think so."

Witness Gladys Thomas: Q. "From your conversation with Maggie Lomax in 1940 and 1941, do you have an opinion as to whether or not she was able mentally to dispose of her property by will? A. I have. Q. Describe her mental condition the latter part of 1940 and early part of 1941. A. Her mentality was not good because—I said that I don't think her mind was good because she would tell one thing and she would tell you the same thing several times. In my judgment I don't think she was capable of making a will January 8, 1941."

From judgment for caveators on the verdict propounder appealed.

*Cecil C. Jackson and George F. Meadows for caveators.*
*Carl W. Greene for propounder.*

DEVIN, J. While considerable latitude is permitted in the reception of opinion evidence as to mental capacity from witnesses who base their opinions upon personal association, transactions and conversations (*In re Rawlings' Will,* 170 N. C., 58, 86 S. E., 794), this rule should not be expanded to include mere expressions of opinion not based on circumstances importing mental incapacity, nor should the witnesses be permitted to answer questions as to whether the person whose mental capacity is the subject of inquiry had sufficient mental capacity to make a will or execute a deed, when neither by the question nor by instructions of court or counsel have the witnesses been apprised of what is in law meant by, or required to constitute, mental capacity sufficient to make a will.

To ask a witness whether in his opinion the person under investigation was or was not competent to make a will is improper for the reason that such question assumes the witness knows, or leaves to him to determine for himself, what is or should be the proper test of mental capacity to execute a valid will. Rogers Expert Testimony, 3rd Ed., sec. 206. The obvious objections to allowing a witness to answer the general question as to whether or not a person was capable of making a will or

contract have led the courts generally to exclude the conclusions of witnesses in answer to such questions.

"By all courts a mere abstract statement that the person was or was not 'capable' of making a will or a contract or a deed seems to be held improper; but there is a great contrariety of ruling upon other forms of statement." Wigmore Ev., sec. 1958. Capacity to make a will is not a simple question of fact. It is a conclusion which the law draws from certain facts as premises. Lawson Expert & Opinion Ev., page 155. Hence, the witness must state the facts gained from personal observation as a predicate for the expression of his opinion. *Turner v. Am. Security & Tr. Co.*, 213 U. S., 257; Smoot Law of Insanity, sec. 599.

Failure to observe this rule, in the admissions of the evidence elicited by the questions objected to in the case at bar, has, we think, prejudiced the propounder's cause. Several non-expert witnesses were permitted to say the decedent at the time of executing the paper writing propounded did not have mental capacity to make a will, apparently without understanding what degree of mental capacity was necessary to constitute legal competency.

While the court in his charge to the jury properly defined mental capacity in accordance with the decisions of this Court (*Garland v. Allison*, 221 N. C., 120, 19 S. E. (2d), 245; *In re Broach's Will*, 172 N. C., 520, 90 S. E., 681; *In re Thorp*, 150 N. C., 487, 64 S. E., 379), we think there was prejudicial error in the admission of testimony, necessitating a new trial, and it is so ordered.

New trial.