IN THE MATTER OF THE WILL OF ALLYNE H. COLEY, DECEASED

No. 809SC884

(Filed 4 August 1981)

**1. Wills § 21.4— caveat proceeding—undue influence—insufficiency of evidence**

    The trial judge in a caveat proceeding did not err by refusing to submit an issue of undue influence to the jury where caveator offered evidence of deceased's weakened mental and physical condition, the result of the will itself which left $1,000 to her and the remainder of the estate to propounder, the propounder's involvement in assisting testatrix, who was her aunt, to get the will prepared, and the propounder's desire that her aunt make a will and that she share in her aunt's estate, but such evidence was not sufficient to support an inference that the will was the result of an overpowering influence exerted by propounder on testatrix which overcame testatrix's free will and substituted for it the wishes of propounder so that testatrix executed a will which she otherwise would not have executed.

**2.1 Wills § 22— caveat proceeding—lack of testamentary capacity—insufficiency of evidence**

    Evidence of lack of testamentary capacity was insufficient to send that issue to the jury in a caveat proceeding since no witness offered any opinion

negating any element of testamentary capacity, and evidence of testatrix's weakened physical condition and confusion alone was insufficient to make a prima facie case of lack of capacity.

APPEAL by caveator from *Farmer, Judge.* Judgment entered 10 April 1980 in Superior Court, GRANVILLE County. Heard in the Court of Appeals 1 April 1981.

The testatrix, Allyne H. Coley, died on 23 February 1979. A will purportedly executed by testatrix on 18 April 1978 was presented to the Clerk of Superior Court of Granville County for probate by LaVerne C. Marks, who is testatrix's niece, beneficiary, and the executrix of her will. Mamie G. Hoffmann, another niece of testatrix, and also a beneficiary under her will, filed a caveat to the will, alleging that it was not the last will and testament of the testatrix because it was procured by the undue influence of the propounder and because testatrix lacked testamentary capacity at the time the purported will was made. The will provided that caveator was to receive $1,000 from testatrix's estate and propounder was to receive the remainder of the estate.

Propounder's motion for directed verdicts on the issues of undue influence and lack of testamentary capacity, made at the close of all the evidence, was granted by Judge Farmer. Judge Farmer also granted propounder's motion for peremptory instructions to the jury on the issues of whether the document offered into probate was executed by testatrix according to the legal requirements for a valid will and whether the document was the last will and testament of the testatrix. The jury answered these two issues affirmatively. From a judgment admitting the document to probate in solemn form, caveator appeals.

Other facts relevant to the decision of this case are recited and discussed in the opinion.

*Arthur Vann, for the propounder-appellee.*

*Harriss, Mulligan, Embree, Herbert & Derr by Michael J. Mulligan, for the caveator-appellant.*

MARTIN (Robert M.), Judge.

By her first assignment of error, caveator contends the court should have allowed her pre-trial motion for continuance. The mo-

tion was addressed to the sound discretion of the trial judge and his ruling thereon will not be disturbed in the absence of a manifest abuse of discretion. No abuse of discretion has been shown.

By her second assignment of error, caveator presents the questions of whether she presented a *prima facie* case that testatrix's will was the product of undue influence or that testatrix lacked sufficient mental capacity to make the will.

In a caveat proceeding, the burden of proof is upon the propounder to prove that the instrument in question was executed with the proper formalities required by law. Once this has been established, the burden shifts to the caveator to show by the greater weight of the evidence that at the time of the execution thereof testatrix did not have sufficient mental capacity to make a will or that it was procured by undue influence. It is our function, in a case such as this, to consider all of the evidence in the light most favorable to the caveator, deem her evidence to be true, resolve all conflicts in her favor and give her the benefit of every reasonable inference to be drawn in her favor. *In re Andrews*, 299 N.C. 52, 261 S.E. 2d 198 (1980). For this reason, although much of caveator's own evidence, including her testimony, was contradictory and often tended to negate her claims of undue influence and lack of testamentary capacity, we will recite only the evidence which tended to support her claims. Viewing the evidence in such manner, if caveator presented sufficient evidence of undue influence or lack of testamentary capacity so that the jury could find for the caveator, if it believed her evidence, then the motion for directed verdict on that issue should have been denied.

[1] First, we will consider the question of whether caveator presented sufficient evidence of undue influence to send that issue to the jury.

To constitute undue influence within the meaning of the law, there must be more than *mere* influence or persuasion because a person can be influenced to perform an act that is nevertheless his voluntary action. *In re Will of Frank*, 231 N.C. 252, 56 S.E. 2d 668 (1949), *rehearing denied*, 231 N.C. 736, 57 S.E. 2d 315 (1950). For the influence to be undue,

" 'there must be something operating upon the mind of the person whose act is called in judgment, of sufficient controlling effect to destroy free agency and to render the instrument, brought in question, not properly an expression of the wishes of the maker, but rather the expression of the will of another. It is the substitution of the mind of the person exercising the influence for the mind of the testator, causing him to make a will which he otherwise would not have made.' " *In re Will of Kemp,* 234 N.C. 495, 498, 67 S.E. 2d 672, 674 (1951), *quoting In re Will of Turnage,* 208 N.C. 130, 131, 179 S.E. 332, 333 (1935); *see generally,* Wiggins, *Wills and Administration of Estates in North Carolina* § 55 (1964).

. . .

It is impossible to set forth all the various combinations of facts and circumstances that are sufficient to make out a case of undue influence because the possibilities are as limitless as the imagination of the adroit and the cunning. The very nature of undue influence makes it impossible for the law to lay down tests to determine its existence with mathematical certainty. *In re Will of Beale, supra.*

Several of the factors that are relevant on the issue of undue influence include:

"1. Old age and physical and mental weakness.

2. That the person signing the paper is in the home of the beneficiary and subject to his constant association and supervision.

3. That others have little or no opportunity to see him.

4. That the will is different from and revokes a prior will.

5. That it is made in favor of one with whom there are no ties of blood.

6. That it disinherits the natural objects of his bounty.

7. That the beneficiary has procured its execution." *In re Will of Mueller,* 170 N.C. 28, 30, 86 S.E. 719, 720 (1915).

*In re Andrews, supra* at 53-55; 261 S.E. 2d at 199-200.

Caveator presented evidence on three of the seven factors listed above as relevant to the issue of undue influence.

(1) Testatrix was 75 years old and was physically and mentally weak at the time she made the will in question. She had a stroke in 1963, after which her memory was impaired. Testatrix was able to overcome most of the physical effects of the stroke. One of testatrix's friends testified "[a]fter the stroke she was never right again. If somebody wanted her to do something they'd tell her today and she'd fall right in with it. Well, maybe tomorrow, she'd do the same thing with somebody else. That condition continued in my opinion right up to the date of her death." Several witnesses testified that beginning in 1973, testatrix's health gradually deteriorated. She developed hearing problems and was not as active physically as she had been before that time. She had arthritis and was partially paralyzed. It was difficult for her to move around and she had to be carried to the car. She was "confused" at times. At other times she acted "normally."

(2) Propounder and her family moved into testatrix's home approximately four months *after* the will was made and lived there with testatrix until she died in 1979. From 1949 to 1962 she saw testatrix four or five times a year. She did not see testatrix again until 1971 when she saw her once. From 1972 to 1975 she visited testatrix four or five times per year. She started visiting testatrix more frequently in 1975. In January of 1978, propounder started writing some of testatrix's checks for her. Other evidence was presented concerning propounder's close association with testatrix some months *after* the will was made.

(3) There was no evidence presented which tended to show that others had little or no opportunity to see testatrix.

(4) There was no evidence that the will was different from a prior will. Caveator testified that she had been told testatrix made a prior will but that she had never seen it.

(5) The will was not made in favor of one with whom testatrix had no blood ties.

(6) The only evidence tending to show that the will disinherited the natural objects of testatrix's bounty was

caveator's testimony that the will "cut off" propounder's sister and daughter and caveator's children.

(7) The attorney who drafted the will testified that propounder made the two appointments he had with testatrix concerning the will. Testatrix told him how she wanted to dispose of her property in the will. Propounder testified that she drove testatrix to the attorney's office twice; once to discuss the provisions of the will and once to sign it. She was present in the room with the attorney and testatrix on both occasions. She called the attorney about drafting the will at testatrix's request. Testatrix gave her a key to the lock box in which the will was kept. Both propounder and caveator testified that they had discussed getting testatrix to make a will in 1976. They went to an attorney's office together "to see what claim an outsider could have on Allyne Coley's property." Caveator testified that on the way to the attorney's office, propounder stated, "she wanted to get her share of that land and she said that if she had to prove Allyne mentally incompetent and have to have her institutionalized, that she would." Caveator also testified that propounder told her "that she wanted my aunt to make a will and she said that if she could get her to make a will that she was going to get it with her and take and put in the lock box so that Allyne wouldn't tear this one up. She also said that she was going to try to get it done one way or the other."

We recognize that usually the trier of fact must decide the presence of undue influence from circumstantial evidence.

> Caveator must rely on inferences from the surrounding facts and circumstances that arise on the evidence in his effort to prove that undue influence existed at the time testator executed his last will and testament thereby causing him to execute a will that he otherwise would not have executed. The more adroit and cunning the person exercising the influence, the more difficult it is to detect the badges of undue influence and to prove that it existed. *In re Will of Beale*, 202 N.C. 618, 163 S.E. 684 (1932).

*In re Andrews, supra* at 54, 261 S.E. 2d at 199-200.

> The test for determining the sufficiency of the evidence of undue influence is usually stated as follows: "[i]t is 'generally

proved by a number of facts, each one of which standing alone may have little weight, but taken collectively may satisfy a rational mind of its existence.' " *Id.* at 29, 86 S.E. at 719, *quoting In re Will of Everett*, 153 N.C. 83, 87, 68 S.E. 924, 925 (1910).

*In re Andrews, supra* at 55, 261 S.E. 2d at 200.

We do not believe caveator presented sufficient evidence of undue influence to survive propounder's motion for directed verdict on that issue. Caveator's case on this issue consisted of evidence of the deceased's weakened mental and physical condition, the results of the will itself, the propounder's involvement in assisting her aunt to get the will prepared, and the propounder's desire that her aunt make a will and to share in her aunt's estate. This evidence was not sufficient to support an inference that the will was the result of an overpowering influence exerted by propounder on testatrix which overcame testatrix's free will and substituted for it the wishes of propounder, so that testatrix executed a will that she otherwise would not have executed. The trial judge did not err by refusing to submit the issue of undue influence to the jury.

[2] Next we turn to the question of whether caveator presented sufficient evidence of lack of testamentary capacity to send that issue to the jury. Mental capacity of a testatrix to make a will is the capacity to understand the kind, nature and extent of her property; to know the natural objects of her bounty; to understand the effect of her act; and to make a disposition of her property. *In re Will of Shute*, 251 N.C. 697, 111 S.E. 2d 851 (1960). The law presumes that a testatrix possessed testamentary capacity, and those who allege otherwise have the burden of proving by the preponderance or greater weight of the evidence that she lacked such capacity. *In re Will of York*, 231 N.C. 70, 55 S.E. 2d 791 (1949); *In re Burns' Will*, 121 N.C. 336, 28 S.E. 519 (1897). Where the issue is the mental capacity of the testatrix at the time of making the will, evidence of incapacity within a reasonable time before and after is relevant and admissible insofar as it tends to show mental condition at the time of execution of the will. *In re Will of Stocks*, 175 N.C. 224, 95 S.E. 360 (1918).

A nonexpert witness, who knew the testatrix, had conversations or business transactions with her, saw her, heard her talk

In re Coley

and observed her conduct, may express an opinion or opinions that the testatrix did or did not have sufficient mental capacity to know (1) the nature and extent of her property; (2) who were the natural objects of her bounty; and (3) what she was doing, and to whom she wished to give her property and how, that is, the force and effect of her act in making a will, thereby disposing of her property. *In re Will of Tatum*, 233 N.C. 723, 65 S.E. 2d 351 (1951); *In re Will of York, supra.* Such a witness may relate incidents of conversation, conduct and demeanor of testatrix which tend to show testamentary capacity, or want thereof, and it is not necessary that the witness have or express an opinion as to mental competency of testatrix or that the incident or incidents related be known to another witness who did express such opinion. *In re Will of Hall*, 252 N.C. 70, 113 S.E. 2d 1 (1960). Capacity to make a will is not a question of fact. It is a conclusion which the law draws from certain facts and premises. *In re Will of Tatum, supra; In re Will of York, supra; In re Will of Lomax*, 224 N.C. 459, 31 S.E. 2d 369, 155 A.L.R. 278 (1944). Hence, the witness must state the facts gained from personal observations as a predicate for the expression of his opinion. *In re Will of Lomax, supra.*

In the instant case, caveator's evidence concerning lack of testamentary capacity was insufficient. No witness offered any opinion negating any element of testamentary capacity. The evidence of her weakened physical condition and "confusion" alone was insufficient to make a *prima facie* case of lack of testamentary capacity.

The trial court did not err by allowing propounder's motion for directed verdicts on the issues of undue influence and lack of testamentary capacity.

Affirmed.

Judges WHICHARD and BECTON concur.