Hardee v. Hardee

---

JOHNNIE GAYLON HARDEE, INDIVIDUALLY AND JOHNNIE GAYLON HARDEE AS ADMINISTRATOR OF THE ESTATE OF LAVELLE HARDEE, DECEASED v. WALTON E. HARDEE AND WIFE, LURA G. HARDEE, VERNA H. PARRISH AND ODELL F. HARDEE

No. 8211SC915

(Filed 19 July 1983)

1. **Evidence § 11.6— evidence relating solely to mental capacity—dead man's statute not precluding**

    G.S. 8-51 allows an interested witness, when the decedent's mental capacity of free exercise of will is at issue, to relate personal transactions and conversations between the witness and the decedent as support for his opinion as to the mental capacity of that decedent. Therefore, it was not error for the trial court to allow into evidence testimony which tended to show that plaintiff's father was mentally competent when he was able to point out the lines of his property but was mentally incompetent when his father was in the hospital just prior to signing the questioned deed.

2. **Cancellation and Rescission of Instruments § 10.2— issue of undue influence—sufficiency of evidence**

    Plaintiff's evidence that during the week before a deed was executed, decedent was experiencing a post-operative "down" phase, had recently undergone surgery for the removal of a brain tumor the size of a large egg, was incoherent, could not engage in conversation, and that the deed conveyed

the bulk of decedent's property to persons other than his offspring, was evidence sufficient to justify submission of that issue to the jury on the question of undue influence.

Chief Judge VAUGHN dissenting.

APPEAL by defendants from *Britt, Judge.* Judgment entered 17 March 1982 in Superior Court, HARNETT County. Heard in the Court of Appeals 8 June 1983.

*Morgan, Bryan, Jones & Johnson, by Robert C. Bryan, for defendant appellants.*

*Johnson & Johnson, P.A., by W. A. Johnson and Sandra L. Johnson, for plaintiff appellee.*

BECTON, Judge.

I

Plaintiff instituted this suit to contest the validity of a deed from his father, Lavelle Hardee, now deceased, to his grandparents, Walton and Lura Hardee. That deed purportedly conveyed the decedent's remainder interest in a forty-nine (49) acre timber tract to the life tenants, plaintiff's grandparents.

Plaintiff alleged that on the date the deed was executed, 13 June 1980, his father lacked sufficient mental capacity to convey realty, and that because of the exertion of undue influence on his father by the defendants, Walton and Lura Hardee were conveyed the forty-nine (49) acre tract. They later conveyed it to the defendants Verna Parrish and Odell Hardee and retained a life estate. Plaintiff also alleged that at the time of the conveyance the land contained valuable timber; that after acquiring the land defendants sold that tract to a timber company; and that the company cut the timber and inflicted approximately $14,000 damages upon the tract itself when it removed $30,000 worth of timber.

Defendants timely filed an Answer, controverting the material allegations of the Complaint.

A jury trial was held. Defendants moved, both at the end of plaintiff's evidence and at the close of all the evidence, for an involuntary dismissal,[1] contending that plaintiff's evidence was in-

---

1. This motion should have been denominated as one for directed verdict.

sufficient to go to the jury on the issues of decedent's alleged lack of mental capacity and on the undue influence allegedly exerted upon him. The motions were denied, and the evidence was thus submitted to the jury. The jury found that the decedent possessed the requisite mental capacity to execute the deed on 13 June 1980, but that Lavelle Hardee was induced to execute the deed by the overwhelming influence of the defendants or one of them. The jury assessed damages against the defendants in the amount of $17,400. Defendants moved for judgment notwithstanding the verdict, for a new trial, and for a reduction of damages. Those motions were denied, and judgment was entered for plaintiff. Defendants appealed.

## II

Defendants bring forth seven (7) assignments of error and raise five (5) arguments on appeal.

[1] By their first argument, defendants contend that the trial court erred when it allowed plaintiff to testify concerning a conversation about, and their walk around, the property that is the subject of this controversy, because that testimony allegedly violates N. C. Gen. Stat. § 8-51 (1981), the Dead Man's Statute. The entire colloquy follows:

Q. During this period between March of 1980 and May 26 of '80, did you have any discussions with your father about this property?

OBJECTION BY THE DEFENDANT.

OBJECTION OVERRULED.

A. Yes sir.

Q. And what was that discussion?

OBJECTION BY THE DEFENDANT.

COURT: Step into your room, members of the jury. Do not begin to discuss this case among yourselves. I'll send for you in just a few minutes. This is a matter I want to take up outside your presence.

(Jury absent.)

COURT: The jury is outside the room. I'll hear you now, Mr. Bryan.

MR. BRYAN: Your Honor, any conversation or communications which Johnnie Hardee had with his father relative to what was going to happen to the land or really to anything other than to prove mental capacity or undue influence is barred by the dead man statute.

OBJECTION OVERRULED.

COURT: When was the time of this discussion, sir?

A. The first time that I went back and saw him after his wife's death.

    . . . .

COURT: Members of the jury, the objection of the defendants is overruled at this point and I will allow this conversation to come into evidence as bearing upon the mental capacity of the deceased, Lavelle Hardee, at the time of the conversation and you will be the final judge of what it shows or what it does not show in that respect, as to the mental capacity of Lavelle Hardee.

Q. What was that discussion?

OBJECTION BY THE DEFENDANT.

OBJECTION OVERRULED.

A. He stated that he would like to walk over the property lines with me so I would know where the points were.

Q. And what property was he referring to, if you know?

OBJECTION BY THE DEFENDANT.

OBJECTION OVERRULED.

A. The forty-nine acres of land.

Q. Now your father had a house in this same general area, did he not?

OBJECTION BY THE DEFENDANT.

OBJECTION OVERRULED.

A. Yes sir.

The house was on the uppermost part of the property going toward Coatsboro Road. There were two pieces of land on the same side of the road and it adjoined each other. When I was referring to my father's wife, it was his second wife, and was not my mother.

Q. Mr. Hardee, did you thereafter walk over this tract of land in question with your father and look at the lines and corners?

OBJECTION BY THE DEFENDANT.

OBJECTION OVERRULED.

A. Yes sir.

Defendants concede that our courts recognize an exception to G.S. § 8-51 for evidence that shows the basis for the witness's opinion of the decedent's mental capacity during the relevant period. *See, e.g., Whitley v. Redden,* 276 N.C. 263, 171 S.E. 2d 894 (1970). Defendants nevertheless contend that the testimony complained of in the case *sub judice* does not fall within that or any other exception to the statute, especially since plaintiff had the burden of proving Lavelle Hardee's mental incapacity, not his mental capacity. In short, defendants argue that the evidence excepted to is primarily probative of Lavelle Hardee's dispositive intent and whether the intent expressed in the deed was formed through the exercise of his own free will. We disagree.

G.S. § 8-51 allows an interested witness, when the decedent's mental capacity of free exercise of will is at issue, to relate personal transactions and conversations between the witness and the decedent as support for his opinion as to the mental capacity of that decedent. *Whitley v. Redden.* Such evidence is inadmissible, however, "when it is offered for the purpose of proving and does tend to prove vital and material *facts* which will fix liability against the representative of a deceased person. . . ." *Id.* at 272, 171 S.E. 2d at 901. The crucial distinction, then, is whether the evidence is offered primarily to show the basis for the witness's opinion as to the decedent's mental condition or whether it is offered to prove some other controverted fact. *In Re Will of Ricks,* 292 N.C. 28, 231 S.E. 2d 856 (1977).

Our review of the record evidence reveals only four statements that arguably pertain to decedent's dispositive intent:

(i) that Lavelle Hardee told plaintiff that he wanted to walk over the tract so that plaintiff would know where the boundaries were; (ii) that Lavelle Hardee had a house in the general area of the tract; (iii) that the tract referred to is the forty-nine (49) acres in dispute; and (iv) that Lavelle Hardee and plaintiff did in fact walk over the property.

When the evidence complained of is considered in conjunction with the question and answer immediately following it, that evidence bears *primarily*, if not wholly, on the accuracy of plaintiff's assessment of his father's mental capacity.[2] It was proper for plaintiff to show that he knew when Lavelle Hardee was mentally competent (when Lavelle Hardee was able to point out his lines in March) and mentally incompetent (when Lavelle Hardee was in the hospital just prior to signing the questioned deed). We do not view the challenged testimony as having been "weighted towards proving facts essential to establishing plaintiff's claim." *Whitley v. Redden* at 273, 171 S.E. 2d at 901.

The propriety of that conclusion is bolstered by our Supreme Court's decision, on similar facts, *In Re Will of Ricks* cited above. Reversing the decision of this Court granting a new trial, our Supreme Court held that the trial court had not erred when it allowed testatrix's son, the sole beneficiary of her will, to testify over a G.S. § 8-51 objection, that testatrix told him she wanted (i) to make a will; (ii) to leave the bulk of her estate to him; (iii) to rely on his choice of legal counsel; and (iv) to rely on him to provide transportation to and from counsel's office. Rather, the Court concluded, after a thorough discussion of leading precedent:

---

2. The question asked next was:

What was your father's mental condition as you observed it there in March and April of 1980?

OBJECTION BY DEFENDANT.

COURT: Do you have an opinion about that?

A. Yes, sir, I have an opinion.

COURT: Objection is overruled.

Q. And what is that opinion?

OBJECTION BY DEFENDANT.

In March or April of 1980, he seemed perfectly normal, in my opinion.

The transactions and communications with the deceased which he related, considered in the context of his other testimony and other evidence in the case, seem clearly to have been offered mostly for the purpose of showing the basis for his opinion that his mother at the crucial time in question had the mental capacity to execute a will. The declarations or statements which he attributed to the deceased were not offered primarily to prove the truth of any assertion contained therein. Their probative value depends more on the fact that they were made.

*In Re Will of Ricks* at 42, 231 S.E. 2d at 866.

Considering, then, the Supreme Court's decision in *Ricks;* the fact that the trial court in the case *sub judice* gave adequate and numerous limiting instructions each time the evidence was tendered; the context of the evidence tendered; and the content of the answers themselves, we hold that the evidence objected to was properly admitted. The probative value of "the walk around" the acreage lies in the fact that it occurred and that Lavelle Hardee knew where his lines were, rather than in any of the plethora of inferences that could be drawn therefrom. We therefore find defendant's primary argument unpersuasive.

### III

[2] Defendants next argue that plaintiff failed to meet his burden on the issue of undue influence, that the case should not have been submitted to the jury, and that their motion for directed verdict should have been allowed.

When considering a motion for directed verdict, a trial court must consider the non-movant's evidence in its most favorable light, treat that evidence as true, and resolve all permissible inferences in favor of that non-movant.

The issue before us, then, is whether plaintiff's evidence, when considered in its most favorable posture, was sufficient to establish a *prima facie* showing that decedent's 13 June 1980 deed was the product of the exertion of undue influence upon him.

A *prima facie* case of undue influence consists of evidence of a set of facts, circumstances, and inferences from which a jury could find that the challenged document is not the product of its

executor's free will, but instead, the result of an overpowering influence on that person, sufficient to cause him to create a document he would not otherwise have executed. *In re Andrews*, 299 N.C. 52, 56, 261 S.E. 2d 198, 200 (1980).

Plaintiff's evidence showed that during the week before the deed was executed, decedent was experiencing a post-operative "down" phase, had recently undergone surgery for the removal of a brain tumor the size of a large egg, was incoherent, could not engage in conversation, and that the deed conveyed the bulk of decedent's property to persons other than his only offspring. That evidence is, in our view, sufficient to justify submission of that issue to the jury. We thus find this argument unpersuasive.

IV

We have examined the remainder of defendants' arguments and find them to be without merit. The trial below was free of prejudicial error.

No prejudicial error.

Judge HILL concurs.

Chief Judge VAUGHN dissents.

Chief Judge VAUGHN dissenting.

The following evidence may be helpful to an understanding of why I must dissent.

Odell Hardee testified that in 1973 his father, Walton Hardee, who is now ninety years old, divided his land into four parcels. He gave each of his four children a remainder interest in a parcel of the farmland, and he retained a life estate. Walton's children were Verna, Lavelle (the decedent), Elmer, and Odell. The conveyance in dispute is the deed Lavelle executed conveying the property back to his father. After Lavelle's death, Walton conveyed that property to Odell and Verna. Odell and Verna sold timber that was on the property.

The plaintiff, Johnnie Hardee, is Lavelle's only child. He testified on cross-examination that he and his mother left his father's house when he was one year old. He lived with his mater-

nal grandparents until he was fourteen, then he lived with an uncle for two years and with his mother for two years. Lavelle remarried, and his second wife, Betty, died in March of 1980. Johnnie did not attend the funeral. Johnnie, who is now twenty-five years old, said he had been completely estranged from his family until two months before Lavelle went into the hospital. When Johnnie visited Lavelle at that time, it was the first time he had visited him in two and one-half years. Johnnie lived about twenty-five miles from Lavelle. In the absence of the jury, Johnnie was asked: "Prior to that time [March 1980] hadn't your relationship with the Hardee family been about nil?" Johnnie answered, "Yes sir, that is true."

Plaintiff introduced testimony through several other witnesses which tended to show that Lavelle was without sufficient mental capacity to execute the deed to Walton.

At the close of plaintiff's evidence, defendants moved for an "involuntary dismissal," which should have been a motion for directed verdict, on the ground that there was no evidence of either mental incapacity or undue influence. The motion was denied.

Defendants introduced evidence through five witnesses that tended to show that Lavelle had sufficient mental capacity to execute the deed. The parties stipulated that on 9 June 1980, Lavelle attempted to deliver a power of attorney to appoint David Stroud as his attorney in fact. The power of attorney was filed on 10 June 1980. David Stroud, Lavelle's employer, testified that he and Lavelle were friends, and he visited Lavelle every day in the hospital. He said that while Lavelle was in the hospital, except for his drowsy periods, he was competent and capable of doing whatever he wanted to do.

William Parrish, Lavelle's brother-in-law, said he was present when Lavelle executed the deed to Walton and his wife, Lura, on 13 June 1980. He described the event as follows:

> We returned the day that the deed was executed, and I was present on that occasion in the hospital. At that time, my wife, Verna, Mr. Hardee, Ms. Castlebury, the notary public, and Lavelle Hardee were there. Mr. Walton Hardee was there too. Mr. Odell Hardee and his wife were not there;

Mr. Walton Hardee took the deed. At that time, Mr. Walton Hardee was very weak. I understand Mr. Walton Hardee had been up to see Lavelle before this time. We got to the hospital between 11 & 12 o'clock.

Before we went to the hospital, we went by Mr. Penny's office in Lillington and Mr. Walton Hardee went in and got some legal papers. When we got the deed, we went to Wake Memorial Hospital, and got there between 11 and 12 o'clock, and went up to Lavelle Hardee's room. Mr. W. E. Hardee, Verna, and I went up to Lavelle's room. When we got there, we talked and inquired of his welfare. When we got there, Lavelle Hardee was reading the paper, and was in bed with his head propped up. We had a conversation with him at that time.

. . .

We stayed in Lavelle's room about 30 to 45 minutes before the deed was mentioned. During this period of time, I saw and observed his condition. He seemed very alert and knew what he was talking about. . . .

During the signing of the deed, the hospital attendant came in. At this time, Mr. Walton Hardee was sitting in a wheelchair and the hospital attendant started to remove his shoes and put him in the vacant bed. Mr. Lavelle Hardee, like the rest of us, laughed about it.

After that transpired, Mr. Lavelle Hardee asked his father, Mr. W. E. Hardee, if he had the papers, and his father told him he did. Mr. W. E. Hardee took the papers out of the envelope and handed them to Lavelle, unfolded them and handed them to Lavelle, and this was the deed. Nobody else other than Verna, Mr. Hardee, Lavelle and I were in the hospital room at the time. Subsequently, the notary came in the room.

. . .

At that time, Lavelle said that he had some papers he wanted her to notarize. She asked him if he knew what the papers were, had he read the papers. He said he had. She asked him what his room number was, and he told her what

the room number was. She asked him what his telephone number was and he told her the telephone extension number. She reminded him that this was serious and did he know what he was doing and he said yes, and again she asked him if that's what he wanted to do and he said yes and he reached for papers.

At the close of all the evidence, defendants moved for a directed verdict on the issues of mental incapacity and undue influence. The motion was denied. The jury found that Lavelle had sufficient mental capacity, but was induced to execute the deed by the undue influence of the defendants. Defendants' motions for judgment notwithstanding the verdict, and for a new trial, were denied.

Defendants' first assignment of error is that the trial judge violated the Dead Man's Statute, G.S. 8-51, when he permitted Johnnie Hardee to testify as to personal transactions and communications with Lavelle. The testimony excepted to by defendants is set out in the majority opinion. G.S. 8-51 prohibits an interested party from testifying on his own behalf as to personal transactions or communications between the witness and the decedent when the testimony is against a person deriving his title or interest from the decedent. *See Peek v. Shook*, 233 N.C. 259, 63 S.E. 2d 542 (1951). Notwithstanding G.S. 8-51, in an action to set aside a deed it has long been the rule that an interested party may testify to communications with the deceased to show the basis upon which the witness has formed an opinion as to the decedent's lack of mental capacity. *McLeary v. Norment*, 84 N.C. 235 (1881). *Accord, In re Will of Ricks*, 292 N.C. 28, 231 S.E. 2d 856 (1977); *Goins v. McLoud*, 231 N.C. 655, 58 S.E. 2d 634 (1950). In *Ricks*, the Supreme Court explained the above exception to G.S. 8-51, and enlarged it to include evidence of undue influence. The Court said

> Thus it seems an oversimplification of the rules to say that an interested witness may testify to transactions and communications with a deceased only if such testimony is considered on the mental capacity issue but not if it bears on the question of undue influence. The real distinction in the cases is whether the testimony is offered mostly to show the basis for the witnesses' opinion as to the deceased's mental condi-

tion or whether it is offered mostly to prove some other fact in issue. In the former instance the probative value of the testimony rests simply on the fact that the transactions or communications *occurred.* In the latter it rests on the truth of whatever assertions are contained in the transactions or communications related. In the former instance there is no hearsay involved and the testimony is generally admissible, while in the latter the hearsay nature of the testimony renders it inadmissible.

*In re Will of Ricks,* 292 N.C. at 38, 231 S.E. 2d at 863-864.

Johnnie testified, over objection, that Lavelle "stated that he would like to walk over the property lines with me so I would know where the points were." The question is whether the probative value of this statement rests on the fact it was made or on the truth of what is asserted. I believe that the testimony was offered to show Lavelle's dispositive intent. The statement has little bearing on Lavelle's mental capacity because there was no evidence as to whether the boundaries were correct. The statement, however, is the *only* evidence in the record which tends to show that Lavelle had any intention of giving his property to Johnnie. Obviously, the statement's real significance was that it tended to show Lavelle's alleged dispositive intent, and thus was inadmissible hearsay and in violation of G.S. 8-51. I conclude, therefore, that, at the very least, this error would entitle defendants to a new trial.

Appellants' second argument is that their motion for directed verdict on the issue of undue influence should have been granted. Defendants' motion for directed verdict may be granted only if the evidence, considered in the light most favorable to the plaintiff, is insufficient to justify a verdict for plaintiff. *Dickinson v. Pake,* 284 N.C. 576, 201 S.E. 2d 897 (1974). So viewed, plaintiff's evidence tends to show that Lavelle's mental condition in March and April 1980 was normal, but in June he was, at times, incoherent, had poor memory, was often drowsy, and had little interest in what was going on around him.

Undue influence is the exercise of an improper influence over the mind of another so that his professed act is, in reality the act of the third person who procured the result. *Lee v. Ledbetter,* 229 N.C. 330, 49 S.E. 2d 634 (1948). *See also In re Andrews,* 299

N.C. 52, 261 S.E. 2d 198 (1980). In *Andrews*, the Supreme Court listed the following seven factors which are relevant on the issue of undue influence:

> "1. Old age and physical and mental weakness.
>
> 2. That the person signing the paper is in the home of the beneficiary and subject to his constant association and supervision.
>
> 3. That others have little or no opportunity to see him.
>
> 4. That the will is different from and revokes a prior will.
>
> 5. That it is made in favor of one with whom there are no ties of blood.
>
> 6. That it disinherits the natural objects of his bounty.
>
> 7. That the beneficiary has procured its execution."

*In re Andrews*, 299 N.C. at 55, 261 S.E. 2d at 200, *quoting In re Will of Mueller*, 170 N.C. 28, 30, 86 S.E. 719, 720 (1915). *See also In re Coley*, 53 N.C. App. 318, 280 S.E. 2d 770 (1981).

In the instant case, none of these factors were both present and probative of undue influence. The first factor, old age and physical and mental weakness, although present, was not relevant because Walton Hardee, the grantee, was ninety years old and in a wheelchair. Obviously, Walton was in no position to take advantage of Lavelle's age and weakness. The fourth factor, prior dispository intent, was shown only in Johnnie's inadmissible testimony. The sixth factor was not present because, although Johnnie is the biological son of the grantor, all the evidence shows that there was no parent-child relationship and thus the deed did not disinherit the natural object of the grantor's bounty. The grantor merely returned the gift his father had made to him seven years earlier. None of the other factors are present.

In short, the testimony, viewed in the light most favorable to plaintiff, does not tend to show any evidence of influence over the mind of Lavelle by the defendants. Consequently, I believe defendants' motion for directed verdict on the issue of undue influence should have been granted.

For the foregoing reasons, I would reverse and remand for entry of judgment in favor of defendants.